LORINDA SEEBROCK ET AL., APPELLANTS, V. MARGARET
A. FEDAWA, APPELLEE.

[FILED SEPTEMBER 23, 1890.]

1. **Wills:** PROBATE: TESTAMENTARY CAPACITY: THE BURDEN is
upon the proponent of a will, both in the county court and in the
district court on appeal, to prove, not only the execution of the
will, but the capacity of the testator.

2. ———: ———: RIGHT TO OPEN AND CLOSE. The proponent is
entitled to open and close the argument to the jury.

3. ———: UNDUE INFLUENCE: BURDEN OF PROOF. Where it is
alleged that the execution of a will was procured by undue in-
fluence, the burden is upon the party alleging it to establish
that the testator was induced by improper means to dispose of
his property differently from what he intended.

4. **Instructions:** REITERATION. The supreme court will not re-
verse a case on the ground that the trial court repeated in the
instructions the same proposition of law, where it does not ap-
pear that the purpose was to mystify and confuse the jury, and
that the jury was misled by reason thereof.

5. **Evidence,** *held,* to sustain the verdict and judgment.

APPEAL from the district court for Lancaster county.
Heard below before FIELD, J.

*Lamb, Ricketts & Wilson,* for appellants:

Sanity of a testator is presumed. (1 Jarman, Wills,
104; Schouler, Wills, sec. 174; 1 Redfield, Wills, 32;
*Rush v. Megee,* 36 Ind., 69; *Moore v. Allen,* 5 Id., 521;
*Herbert v. Berrier,* 81 Id., 1; *Sloan v. Maxwell,* 2 Green,
Ch. [N. J.], 563; *Chandler v. Ferris,* 1 Harr. [Del.],
454, 460; *Thompson v. Kyner,* 65 Pa. St., 368; *Egbert
v. Egbert,* 78 Id., 326; *Baxter v. Abbott,* 7 Gray [Mass.],
71; *Banker v. Banker,* 63 N. Y., 409; *Chrisman v.
Chrisman,* 18 Pac. Rep. [Ore.], 6; *Elkinton v. Brick,* 15
Atl. Rep. [N. J.], 391; *Cotton v. Ulmer,* 45 Ala., 378;
*Meeker v. Meeker,* 75 Ill., 266; 1 Williams, Exrs., 20;

*Groom v. Thomas*, 2 Hagg. [Eng.], 433.) Hence contestants were entitled to open and close. (*Bates v. Bates*, 27 Ia., 110; *Moore v. Allen, supra; Turner v. Cook*, 36 Ind., 129; *Herbert v. Bereier*, 81 Id., 1; 1 Thompson, Trials, secs. 237, 239; *Rogers v. Diamond*, 13 Ark., 475'; *McDaniel v. Crosby*, 19 Id., 533; *Tobin v. Jenkins*, 29 Id., 151; *Edelen v. Edelen*, 6 Md., 288; *Brooke v. Townshend*, 7 Gill [Md.], 10; *Higgins v. Carlton*, 28 Md., 115; *Marshall v. Davies*, 78 N. Y., 414.) Most of the cases cited on this question by appellee present different issues from this case, or were rendered under statutes arbitrarily fixing the procedure. The instructions as to the wife's right to influence a testator should have emphasized the fact that the will must represent his wishes at the time when it was made. (Schouler, Wills, 227, 228, 236; *Turner v. Cheesman*, 15 N. J. Eq., 243, 264; *Gardiner v. Gardiner*, 34 N. Y., 155; *Dean v. Negley*, 41 Pa. St., 312; *Haydock v. Haydock*, 33 N. J. Eq., 494; *Marx v. McGlynn*, 88 N. Y., 357; *Baldwin v. Parker*, 99 Mass., 79, 84; *Rollwagen v. Rollwagen*, 63 N. Y., 504.) Especially should the conduct of a second wife, charged with unduly influencing a testator, be scrutinized. (Cases last cited, and *Mullen v. Helderman*, 87 N. Car., 471; Schouler, Wills, sec. 236.) The instructions are vicious because of reiterations. (*Olive v. State*, 11 Neb., 30, 31; *Parrish v. State*, 14 Id., 60; *Kerkow v. Bauer*, 15 Id., 150; *Kopplekom v. Huffman*, 12 Id., 95; *Marion v. State*, 16 Id., 349.) As to the refusal of the twelfth and thirteenth instructions asked: Schouler, Wills, 226, 236; 1 Redfield, Wills, 510; *Haydock v. Haydock, supra; Griffith v. Diffenderffer*, 50 Md., 466; *Mooney v. Olsen*, 22 Kan., 69; *Bates v. Bates, supra; Lynch v. Clements*, 24 N. J. Eq., 431–5; *Rollwagen v. Rollwagen*, 63 N. Y., 504; *Gay v. Gillilan*, 5 S. W. Rep., 7; *Harvey v. Sullens*, 46 Mo., 147; *Reynolds v. Adams*, 90 Ill., 134. As to the exclusion of the expert testimony: *In re Norman's Will*, 33 N.W. Rep. [Ia.], 374;

*Schneider v. Manning*, 12 N. E. Rep. [Ill.], 267; *Kempsey v. McGinniss*, 21 Mich., 123.

*Pound & Burr, Billingsley & Woodard,* attorneys for appellees, and *N. C. Abbott,* guardian *ad litem:*

Under a statute like ours, the executor must prove capacity of testator. (*Taff v. Hosmer,* 14 Mich., 309, 318; *Kempsey v. McGinniss,* 21 Id., 123; *Aikin v. Weckerly,* 19 Id., 482; *Williams v. Robinson,* 42 Vt., 663; *Roberts v. Welch,* 46 Id., 164; *Comstock v. Hadlyme,* 8 Conn., 254; *Knox's Appeal,* 26 Id., 22; *Robinson v. Adams,* 62 Me., 369; *Sutton v. Saddler,* 3 C. B. N. S. [Eng.], 87; *Brooks v. Barrett,* 7 Pick. [Mass.], 96; *Crowninshield v. Crowninshield,* 2 Gray [Mass.], 524; *Baxter v. Abbott,* 7 Id., 83; *Syme v. Boughton,* 85 N. Car., 367; *Delafield v. Parish,* 25 N. Y., 9, 29, 34; *Boardman v. Woodman,* 47 N. H., 120; *Beazley v. Denson,* 40 Tex., 425; *Evans v. Arnold,* 52 Ga., 169, 182; Schouler, Wills, secs. 170, 184; *Will of Silverthorn,* 68 Wis., 372; 1 Whart., Ev., sec. 530; 1 Greenleaf, Ev., sec. 77; 1 Jarman, Wills, notes by R. & T., 105; Schouler, Exrs. & Admrs., sec. 73; *McMechen v. McMechen,* 17 W. Va., 683; *Gerrish v. Nason,* 22 Me., 438; *Hardy v. Merrill,* 56 N. H., 227; *Carpenter v. Calvert,* 83 Ill., 63, 71; *Baldwin v. Parker,* 99 Mass., 79; *Kerr v. Lunsford,* 31 W. Va., 679; *Hathaway's Appeal,* 46 Mich., 327.) As to the effect of drunkenness on testamentary capacity: *Peck v. Cary,* 27 N. Y., 9; *Pierce v. Pierce,* 38 Mich., 412; *Estate of Gharky,* 57 Cal., 274; *Estate of Johnson,* Id., 530; *Schramm v. O'Connor,* 98 Ill., 541; *Van Wyck v. Brasher,* 81 N. Y., 262. As to what constitutes testamentary capacity: *Will of Silverthorn,* 68 Wis., 372; *Meeker v. Meeker,* 75 Ill., 266; *Rutherford v. Morris,* 77 Id., 410; *Trish v. Newell,* 62 Id., 197; *Carpenter v. Calvert,* 83 Id., 63, 71; *Chafin's Will,* 32 Wis., 557; *Lewis's Will,* 51 Id., 101; *Jackman's Will,* 26 Id., 104; *Will of Sarah Blakely* 48 Id., 300; *Kempsey v. Mc-*

*Ginniss*, 21 Mich., 140; *Higgins v. Carlton*, 28 Md., 115; 1 Jarman, Wills, 112; *Thompson v. Kymer*, 65 Pa. St., 368; *Harvey v. Sullens*, 46 Mo., 247; *Bundy v. Mc-Knight*, 48 Ind., 502; *Aikin v. Weckerly*, 19 Mich., 482; *Horn v. Pullman*, 72 N. Y., 269. As to the value of expert testimony on testamentary capacity: *Will of Sarah Blakely*, 48 Wis., 305; *Fraser v. Jennison*, 3 N. W. Rep., 882; *Kempsey v. McGinniss*, 21 Mich., 139; *Pierce v. Pierce*, 38 Id., 417; *Parish Will Case*, 29 Barb. [N. Y.], 627; *Carpenter v. Calvert*, 83 Ill., 62. Bequest of another's property is not positive evidence of incapacity. (1 Jarman, Wills, 113; *Schneider v. Koester*, 54 Mo., 500; *Snow v. Benton*, 28 Ill., 306.) Nor is an unequal division of the property. (1 Jarman, Wills, 112; *Coleman v. Robertson*, 17 Ala., 84; *Gamble v. Gamble*, 39 Barb. [N. Y.], 373; *Trumbull v. Gibbons*, 2 Zab. [N. J.], 117; *Rutherford v. Morris*, 77 Ill., 397.) The instructions are well supported by authority. (*Pierce v. Pierce*, 38 Mich., 412; *Latham v. Udell*, 38 Id., 238; *Wallace v. Harris*, 32 Id., 380; *Harring v. Allen*, 25 Id., 505; *Brick v. Brick*, 66 N. Y., 145; *Children's Aid Society v. Loveridge*, 70 Id., 387, 394; *Gardiner v. Gardiner*, 34 Id., 155; *Monroe v. Barclay*, 17 O. St., 302; *Rabb v. Graham*, 43 Ind., 1; *Carpenter v. Calvert*, 83 Ill., 62; *Roe v. Taylor*, 45 Id., 485; *Pingree v. Jones*, 80 Id., 177; *Yoe v. McCord*, 74 Id., 33; *Tawney v. Long*, 76 Pa. St., 106; *Jackman's Will*, 26 Wis., 104; *McKeone v. Barnes*, 108 Mass., 344; 1 Jarman, Wills, 36, 131, 144; *McIntire v. McConn*, 28 Ia., 480; *Rankin v. Rankin*, 61 Mo., 295; *Latham v. Schaal*, 25 Neb., 535; *Bradford v. Vinton*, 26 N. W. Rep. [Mich.], 401; *Rutherford v. Morris*, 77 Ill., 410.

NORVAL, J.

In 1888, Margaret A. Fedawa presented to the county court of Lancaster county, for probate, the last will and

testament of John A. Fedawa, deceased.   Due notice was
given, as required by law, to all persons interested.   J. A.
M. Fedawa, Milton Fedawa, and Lorinda Seebrock, chil-
dren of the deceased, contested the will.   N. C. Abbott,
Esq., was appointed by the county court the guardian *ad
litem* of Tilly May Fedawa, Flora Belle Fedawa, Florence
Dale Fedawa, and Jay Gould Fedawa, minor children and
heirs of the deceased.   Upon the hearing, the county court
admitted the will to probate and record.   The contestants
appealed from this order and judgment to the district court,
where issues were formed.   The contestants, in their an-
swer, admit the execution of the will, but allege that it is
invalid, for two reasons: First, because the testator, at the
time of its execution, was incompetent to make a valid will,
caused by long, continued, and excessive use of intoxicat-
ing liquors.   Second, because its execution was procured
by fraud and undue influence.   At the May, 1889, term
of the district court, the case was tried to a jury.   A ver-
dict was returned that the paper produced was the last will
and testament of John A. Fedawa, deceased.   The contest-
ants filed a motion for a new trial, which was overruled,
and a judgment was entered authorizing the probate of the
will, and awarding costs against the estate.   The contestants
prosecute a petition in error to this court.

The testator, John A. Fedawa, died about the 1st day
of February, 1888, leaving a widow, the proponent of the
will, and seven children, three by his first wife, the contest-
ants, and four by the proponent.   In 1861 the mother of
the contestants procured a divorce from the deceased, in
the state of Michigan.   The contestants remained with
their mother, and the deceased subsequently went into the
army.   He came to Lincoln, Nebraska, in 1867 or 1869,
where he resided until his death.   In September, 1873, he
was married to the proponent in the city of Lincoln.   He
then had but little property.   At the time of his marriage
to the proponent, Mrs. Fedawa had $500, which shortly

afterwards she gave to her husband.    Subsequently he purchased the National hotel, situated on P street, in the city of Lincoln, for the stipulated price of $5,000, paying down $500, and gave a mortgage on the property for the balance.    He moved into the hotel with his family, made it his home, and carried on the hotel business there until his death.    He also invested in other city property, improving the same, which rapidly increased in value.    Mrs. Fedawa, being industrious and economical, his accumulation of property was, in part, due to her efforts.    The deceased, for several years prior to December, 1886, was a hard drinker; at times he was so dissipated that he neglected his business.    When intoxicated he was ill-tempered and quarrelsome, making it necessary at times to call the police officers to care for him.    In 1883 Mr. Fedawa gave a mortgage to pay for some improvements upon the property.    To induce his wife to execute the mortgage he gave her a bill of sale of some furniture, and an assignment of the rents of certain other property.    In March, 1886, he gave another mortgage, and to induce his wife to join with him in its execution, he assigned her the rentals on the restaurant and the barber shop for a period of five years.    Mr. Fedawa then had left as income the rentals of a lunch stand and part of the moneys from the hotel.    In 1883 he made a will giving all of his property to his wife, of which fact she was afterwards informed.    In January, 1887, Mr. Fedawa went to the Hot Springs, Arkansas.    Before going he made another will, the one offered for probate, which bears date December 29, 1886.    By this will he gave his wife, the proponent, his personal estate, also the real estate, during her widowhood, or until his son Jay Gould reaches his majority, then the real estate was to be divided equally between the four children by his last wife. It also gave $25 to each of the contestants, the children by his first wife.

After the jury was selected and sworn, and before the

introduction of any testimony, the contestants requested that they be allowed to open the case to the jury, and to first introduce their testimony, also to open and close the argument on the issues joined. The court denied the application and the contestants excepted.

The proponent called A. F. Parsons and F. C. Harrison, the subscribing witnesses, who testified to the execution of the will and the mental capacity of the testator. The proponent then rested her case. The contestants thereupon asked that she be required to put in all her testimony, as to the testamentary capacity of the testator, before the contestants introduce any testimony. The order asked for being refused, the contestants took an exception, and then put in their testimony, which tended to show the incapacity of the testator when the will was executed, and that the wife procured its execution by undue influence. After the contestants rested, the proponent, over their objection and exception, offered general evidence to sustain the will. These rulings of the court are assigned for error.

Whether the order of proof adopted by the trial court was the proper one, depends upon the correct answer to the question, Was the burden upon the proponent to prove the execution of the will and the sanity of the testator?

Sec. 123 of chapter 23 of the Compiled Statutes of 1889 provides: "Every person of full age and sound mind, being seized in his own right of any lands, or any right thereto, or entitled to any interest therein descendable to his heirs, may devise and dispose of the same by his last will and testament, in writing; and all such estate not disposed of by will shall descend as the estate of an intestate, being chargeable in both cases with the payment of all debts."

It cannot be doubted from the reading of this section that to entitle a person to dispose of his property by will, it is essential that at the time he should be of sound mind. It is urged by the contestants that as the law pre-

sumes sanity until the contrary is established, the proponent was not required to offer any testimony until after this presumption was overcome by competent evidence. In other words, had no testimony been offered by either party, the will was entitled to probate.   In determining this question, it is necessary to consider the provisions of the statute governing the probate of wills.

Section 140 makes it the duty of the county court having jurisdiction of the same, to fix a time and place for the proving a will and to cause public notice thereof to be given.

Section 141 provides: "If no person shall appear to contest the probate of a will at the time appointed for that purpose, the court may, in its discretion, grant probate thereof on the testimony of one of the subscribing witnesses only, if such a witness shall testify that such will was executed in all the particulars as required in this chapter, and that the testator was of a sound mind at the time of the execution thereof."

Section 142: " If none of the subscribing witnesses shall reside in this state at the time appointed for proving the will, the court may, in its discretion, admit the testimony of other witnesses to prove the sanity of the testator and the execution of the will, and, as evidence of the execution of the will, may admit proof of the handwriting of the testator, and of the subscribing witness."

Thus it will be seen that, under the provisions of the sections above quoted, a will cannot be admitted to probate, even when no contest is entered, until it is established by the testimony that at the time of its execution the testator was of sound mind.   The fact that the will is contested certainly does not change the burden, and require a contestant to first offer testimony as to the insanity of the testator.   It is the duty of the proponent in the first instance to offer sufficient testimony of the capacity of the testator to make out a *prima facie* case.   The contestant

will then introduce his proof to show the invalidity of the will; after which the proponent may introduce further testimony to sustain the will, as well as rebutting testimony. During the entire trial the burden of proof remains with the proponent. Unless the sanity of the testator be established by a preponderance of the testimony, the will cannot be admitted to probate and record.

The order of proof in this kind of a case is not different from that in an action upon a promissory note, when its execution is denied. The plaintiff, when the execution of the note is contested, is only required in the first place to make a *prima facie* case, prove the formal execution. He is not compelled to produce in the opening all of his testimony in support of his case, but after the defendant has put in all his evidence tending to show that he did not execute the note, the plaintiff may go fully into the question with his evidence, and the defendant may then reply by rebutting testimony. The burden, however, is upon the plaintiff to establish the making of the note. (*Donovan v. Fowler,* 17 Neb., 247; *First Nat'l Bank v. Carson, ante,* 104.)

The rule undoubtedly is that, in actions upon contracts, the law presumes the sanity of the parties, and no proof of sanity is required until evidence of unsoundness of mind has been given, and the same rule would obtain in this class of cases, were it not for the express provisions of the statute. The legislature regarded this legal presumption alone insufficient to admit a will to probate. Counsel contend that the same rule does not obtain on appeal to the district court as exists at the hearing in the county court. We do not consent to this. The appeal vacates the judgment of the county court, the case is tried in the district court *de novo,* and if no proof is offered by the proponent, she must fail. Before the close of the trial, the contestants evidently became convinced of the unsoundness of their position, for they asked the court by their third request, to instruct the

jury that the burden of proving the sanity of the testator was upon the proponent. This instruction was given as requested.

A similar question arose in the case of *Kerr v. Lunsford*, 31 W. Va., 679. The court in the opinion says: "But inasmuch as in issues *devisavit vel non* the burden of proving the sanity of the testator is on the proponent of the will, and the issue being 'whether the paper writing is the last will and testament of the testator,' and as the will may be assailed on any and all the grounds, which would show it invalid, it would not promote justice to apply the rule applicable to ordinary law issues. How are the proponents to know what kind of testimony, and how much, the contestants have to prove their general charges of want of capacity and undue influence? What particular objections and evidence may be offered to sustain such general charges can only be known as the evidence is developed. * * * In the trial of an issue *devisavit vel non*, it is the proper course to pursue for the proponents to offer the will and the evidence of its due execution, and the competency of the testator at the time it was executed, and then, having made a *prima facie* case, to rest; and after the contestants have offered their evidence against the validity of the will, it is proper to permit the proponents to offer other evidence to sustain the will, as well as evidence in rebuttal of the evidence of the contestants."

*Williams v. Robinson*, 42 Vt., 658, was an appeal from the decree of the probate court, admitting to probate an instrument purporting to be the last will and testament of one John Robinson, deceased. The contestants claimed that the testator was of unsound mind. On the trial in the appellate court the jury was instructed that the burden of proof as to the incompetency of the testator was upon the contestant. This instruction was held by the supreme court to be erroneous.

The supreme court of Michigan, in *Taff v. Hosmer*, 14

Mich., 309, *Aiken v. Weckerly*, 19 Id., 482, and *Kempsey v. McGinniss*, 21 Id., 123, sanctioned the rule adopted by the trial court in this case.

The statutes of wills in Massachusetts declare that a person must be of sound mind in order to make a valid will. In *Crowninshield v. Crowninshield*, 2 Gray, 527, the supreme court of that state had under consideration the question upon whom was the burden of proof, and in the opinion says: " When therefore a will is offered for probate, to establish it, to entitle it to such probate, it must be shown that the supposed testator had the requisite legal capacities to make the will, to-wit, that he was of full age and of sound mind, and that in the making of it the requisite formalities have been observed. The heirs at law rest securely upon the statutes of descents and distribution, until some legal act has been done by which their rights under the statutes have been lost or impaired. Upon whom then is the affirmative? The party offering the will for probate says in effect: 'This instrument was executed with the requisite formalities by one of full age and of sound mind, and he must prove it; and this is to be done, not by showing merely that the instrument was in writing, that it bears the signature of the deceased, and that it was attested in his presence by three witnesses, but also that it was signed by one capable of being a testator, one to whom the law had given the power of making disposition of his property by will.' "

*Beazley v. Denson*, 40 Tex., 416, was a contested will case. The trial court charge the jury that "every man is presumed by law to possess a sound mind until the contrary be shown by evidence." This instruction was held erroneous. Mr. Justice McAdoo, in delivering the opinion of the court, observes: "In matters of probate, under our law, no such presumption is indulged. On the contrary, in order to establish any will it must affirmatively appear that the deceased was of sound mind when he signed the will.

This affirmative testimony would be necessary if there were no contest, and the law does not justify the imposition of a new rule when by a contest the soundness of the testator's mind is in issue."

In *Potts et al. v. House*, 6 Ga., 324, the court says: "The real question to be decided in both courts in this case was, whether there was a valid will. The executor and those who claim under it, hold the affirmative. They must not only prove, therefore, that the instrument purporting to be a testamentary paper was formally executed, but, also that the testator was of sound and disposing mind and memory. The necessity for this proof imposes the burden on the propounder to begin and close; and when the case is carried up to the superior court by appeal it is to be proceeded with in the same manner as though it had been brought there directly without having been before any inferior tribunal. The executor and those who claim under the will, are as much bound to establish it in the superior court, after the appeal, as they were before the appeal in the court of ordinary. In both they take the affirmative."

That the burden is upon the proponent of a will to prove the sanity of a testator is fully sustained by the following authorities: *Knox's Appeal*, 26 Conn., 20; *Gerrish v. Nason*, 23 Me., 438; *Robinson v. Adams*, 62 Id., 369; *Evans v. Arnold et al.*, 52 Ga., 163; *Delafield v. Parish*, 25 N. Y., 9; *Perkins v. Perkins*, 39 N. H., 163; *Syme v. Broughton*, 85 N. Car., 367; *Renn v. Samos*, 33 Tex., 760; *Williams, Executor, v. Robinson*, 42 Vt., 658; *Runyan v. Price*, 15 O. St., 6.

We concede that the numerous authorities cited in the brief of the plaintiffs in error, hold that the burden is upon the contestant to establish the insanity of the testator. An examination, however, of the cases disclose that many of them are from states having no statutory provisions like ours, while others were actions brought to set aside a will

after it had been admitted to probate.    They are, therefore, not applicable to the case we are considering.

It is insisted by the plaintiffs in error, that, as the petition fails to allege the competency of the testator at the time the will was executed, the proponent was not called upon in the first instance to offer proof that the deceased was of sound mind.    It was not necessary that the petition should allege specifically that the testator possessed the testamentary capacity to make a will.    That is covered by the allegation in the petition " that said instrument is the last will and testament of said John A. Fedawa, deceased, and that the same was duly executed," etc.    Unless Fedawa was of sound mind, the instrument was not his will. (*Hathaway's Appeal*, 46 Mich., 327.)

Again, the record discloses that there are three minor heirs of the deceased who appear by guardian *ad litem*. They did not, nor could they, waive proof of the execution of the will and the sanity of the testator.    This is an additional reason why the proponent was required in this case to make the statutory proof.

Having reached the conclusion that the affirmative was upon the proponent to prove the sanity of the testator, then it follows that she was entitled to open and close the argument to the jury. (Code, sec. 1010*a*; *Vifquain v. Finch,* 15 Neb., 507; *Osborne v. Kline,* 18 Id., 351; *Brooks v. Dutcher,* 22 Id., 655; *Olds Wagon Co. v. Benedict,* 25 Id., 375; *Mizer v. Bristol, ante,* 138.)

The giving of the proponent's 14th request is assigned for error.    By it the jury were told " that the fact that the testator, Fedawa, devised property which he did not own should not prevail as positive evidence showing incompetency."    It was admitted upon the trial that Fedawa never owned lot 4, described in the will, but did own lot 3 in the same block which was not included in the will.    The criticism offered upon the instruction consists in the using of the word positive.    That the will describes lot 4 which the tes-

tator did not own, and omitted lot 3 which he did own, was not a very strong circumstance, if any, supporting the theory of the incompetency of testator.   Mistakes in drawing contracts and papers are of frequent occurrence among the shrewdest of business men.   The fact that the will contained a misdescription of the lot is certainly not conclusive evidence of the insanity of the testator.   By instruction No. 11½, given at the request of the contestants, the jury were informed that they could take into consideration the fact that the testator did not own lot 4 mentioned in the will, in determining his capacity to make a valid will.   Taking the two instructions together we do not see how the jury could have been misled by the use of the word "positive," in the instruction complained of.

No other particular instruction is objected to.   Some criticisms are made upon the charge as a whole.   It is claimed by the contestants that none of the instructions stated what would constitute undue influence.   A very good definition of the term is to be found in paragraph 6 of the instructions, given by the trial court on its own motion.   It states that "undue influence is that which compels or induces the testator to do that which is against his will, from fear, the desire of peace, or some feeling which he is unable to control.   The influence which will vitiate a will on the ground of undue influence, must amount to such a degree of restraint and coercion as to destroy the testator's free agency."   This was in substance repeated in the fifth, ninth, tenth, and twelfth requests of the proponent.   Besides, the contestants' ninth request specifically mentioned some of the acts relied upon in this case to show undue influence, and it informed the jury that if such acts were established by the testimony the will should be rejected.   The jury were fully informed what would and what would not constitute undue influence.   It runs through the instructions that, if the proposed will did not represent the free and voluntary wishes of the testator, but

those of some other person, it was inoperative and void. To vitiate a will on the ground of undue influence, it must appear that such influence forced the testator to make a different disposition of his property from what he intended, and that such influence was exercised for that purpose. (*Latham et al. v. Schaal*, 25 Neb., 535; *Bradford v. Vinton*, 26 N. W. Rep., 401; *Jackman's Will*, 26 Wis., 104; *Monroe v. Barclay*, 17 O. St., 302; *Gardiner v. Gardiner*, 34 N. Y., 155; *Pierce v. Pierce*, 38 Mich., 412.) The instructions fully and fairly submitted to the jury the question of undue influence, and the contestants have no just cause of complaint in that respect.

In some of the instructions it was stated, in substance, that influence acquired over the testator by kindness and wifely attention, will not vitiate the will. It is insisted that there is no evidence in the record on which to base such an instruction. True, there is a great mass of testimony conducing to show that at times the domestic relations of Fedawa and his wife were not of the most pleasant character; that they sometimes quarreled, and that the police had to be called to quell the disturbance. It also appears that these difficulties generally occurred when Fedawa was under the influence of liquor. When sober, the family relations were peaceable and pleasant, and the proponent treated him with kindness and affection. That the testator and his wife had a strong attachment for each other, clearly appears from the letters in the record written by him to her from the Hot Springs, shortly after the making of the will. They are full of expressions of love and affection for the proponent and her children. There was ample testimony before the jury making the instructions criticised, pertinent and proper.

We are asked to reverse the case because the same proposition of law was more than once stated in the court's charge to the jury. While the instructions contain some repetitions, it does not appear that the purpose was to mys-

tify and confuse the jury, or that the jury could have been misled by reason thereof.

The contestants claim that the district court erred in refusing to give to the jury their twelfth and thirteenth requests, which are as follows:

"12. The jury are instructed that undue influence is a variable term. What would be undue influence, where the testator's mind was impaired, might not be undue influence if the testator possessed the full vigor of mind and body. It depends upon the power of the testator to resist. To be undue it requires greater or less influence in each particular case, according to the condition of the testator, or his power to resist. In case the testator's mind is seriously impaired from any cause, slight influence, if sinister or selfish, would be undue. If the provisions of the will are found to be unnatural or unusual, this should be taken into consideration in determining whether or not it is the product of undue influence, and if the party or parties, in whose interest the alleged undue influence was exerted, are found to be liberally provided for, to the exclusion of others who were the natural objects of the testator's bounty, this would be one indication of the presence of undue influence, and if followed up by evidence tending to show that advantage was taken or improper influence brought to bear upon the testator at and prior to the time of making the alleged will, this would justify you in finding that it was not his will.

"13. A proposed will which is partial and unjust in its provisions and devoid of natural duty and affection towards natural objects of the testator's bounty is by the law regarded with jealousy and suspicion, even though the testator may possess sufficient capacity to make a valid will, if left to himself."

The substance of the first part of the twelfth request was incorporated in the seventh instruction given on the court's own motion, which directed the jury, in determin-

ing whether or not the will was obtained by undue means, to consider all the testimony bearing upon the mental and physical condition of Fedawa when he executed the instrument, and all the circumstances surrounding him at that time. The last part of the twelfth, as well as the thirteenth requests were fully covered by the contestants' eighth instruction. It stated that the second wife and her children having been provided for in the will, and the children of the former wife being neglected, was strong evidence of undue influence. We do not desire to be understood as indorsing the proposition, that where a testator has liberally provided for some of his children by his will, to the exclusion of others, it is an indication that the will was the result of undue influence. A testator has a perfect legal right to dispose of his property as he sees fit. It is for him alone to determine who shall be the recipient of his bounty. As the twelfth and thirteenth requests were no more favorable to the contestants than the instructions given, it is unnecessary to determine whether the fact that the contestants were practically disinherited, and the proponent and her children get the bulk of the property, is any evidence that the testator was unduly influenced.

It is insisted that the court erred in sustaining the proponent's objections to the hypothetical questions propounded to Dr. Lane, calling for his opinion as to the mental capacity of Fedawa on the facts assumed by the interrogatories. When the objections were sustained, the contestants should have stated to the trial court what facts the witness, if permitted, would testify to, and preserved the same in the record. Not having done so, we are unable to determine whether any error was made in not permitting the witness to answer the interrogatories propounded.

It is finally insisted that the verdict is not sustained by the evidence. The testimony in the record before us, bearing upon the incapacity of the testator and the charge of undue influence, is very voluminous, consisting of sev-

eral hundred type-written pages. To give a synopsis of the entire testimony, or to discuss it in detail, would greatly extend this opinion beyond its now unreasonable length. It must suffice to briefly refer to some of the material parts of the testimony as indicative of the nature of the testimony that was before the jury.

The will bears date December 29, 1886. Prior to that time Fedawa drank to excess, and when intoxicated was incapable of transacting his ordinary business. It is claimed by the contestants that the will was executed on the day it bears date, which is denied by the proponent. Considerable testimony was introduced by the contestants tending to show that on the 29th day of December, 1886, Fedawa was arrested for an alleged assault, and was taken before the police judge at 2 o'clock P. M. that day; that being too drunk to be tried, he was committed to jail until the following day, and that at no time on that day, nor for some time prior thereto, was he capable of transacting business, on account of his drunken condition. It is pretty clear that if the will was executed on the day that it bears date, it is invalid. The proof offered by the proponent, tends to establish that the will was executed after December 29; that when Fedawa signed the will he was sober though weak and nervous, had perfect possession of his mental faculties, and understood the nature of the business he was transacting.

A. F. Parsons, one of the subscribing witnesses, testified that he was present when the instrument was signed; that Fedawa was very nervous, his hands trembled while signing his name; that he conversed as a person of sound mind and understanding, as intelligently as any one; that his mind was perfectly clear; that he was not intoxicated, and understood what he was doing. The witness further states that Fedawa was brought before him as police judge on December 30, and plead guilty to an assault, and that the will was signed two or three days afterwards.

The testimony of F. C. Harrison, the other subscribing witness, fully corroborates the testimony of the witness Parsons.    There appears in the bill of exceptions, the testimony of Mrs. Fedawa and numerous other witnesses, sustaining the capacity of the testator to make a valid will. The testimony fully justifies the conclusion that the will was executed after the day it bears date, and after Fedawa was discharged from jail.    There was likewise before the jury testimony given by credible disinterested witnesses, sufficient to authorize the jury in finding that when the will was executed the testator was sober, comprehended what he was doing, and was capable of making a valid will.

The only remaining question is, Did the proponent induce her husband by undue influence to dispose of his property contrary to his wishes and desires?    It devolved upon the contestants to establish, by a preponderance of the evidence, their charge of undue influence. (*Baldwin et al. v. Parker et al.*, 99 Mass., 79; *Hardy v. Merrill*, 56 N. H., 227; *Tyler v. Gardiner*, 35 N. Y., 559; *McMechen v. McMechen*, 17 W. Va., 683.)

It appears from the testimony that shortly prior to the execution of the will, Fedawa expressed a desire to go to the Hot Springs for treatment, he being at that time almost a physical wreck.    He did not have the money to pay the expenses of the trip, his creditors were pressing him, his property was incumbered, and most of his income had been assigned to his wife.    She had then nearly $3,000 in the bank.    After the will was executed, the proponent furnished Fedawa $550 with which to pay the expenses of the trip, and to lift some claims against him that were being pressed for payment.    There is considerable testimony tending to show that she refused to furnish the money unless he willed his property to her and her children, and that the disposition made of the property by this will was contrary to the previously expressed wishes

of the testator.  Numerous witnesses were called by the proponent, who testified that they had frequently heard the testator say that his wife had helped earn the property; that he wanted it to go to the proponent and her children, and that he would not give the contestants any part of his estate.  It is undisputed that Fedawa in 1882 or 1883 made a will by which he gave all his property to the proponent.  This will was left with C. C. Burr for safe keeping.  At that time it is certain that Fedawa was of sound mind, and it was not the result of any improper influence. A year or two after its execution, Mr. Burr informed the proponent that her husband had willed her all of his property.  The proponent denies under oath that she asked him to make the will, or that she refused to let him have the money if he did not give her and the children his property.  While her testimony is contradicted by some of the contestants' witnesses, she is corroborated by many circumstances disclosed by the testimony.

Prior to the making of the instrument offered for probate, the first will had not been revoked or destroyed.  It was far more favorable to the proponent than the last one.  It is not likely that she coerced Fedawa to make one less favorable to her.  Again, if the last will did not truly express his wishes, why did he not make another?  He lived several months after it was executed, and had ample opportunity to revoke or change it.  He could have done so while at the Hot Springs, away from the influence of his wife.  Not having revoked it, is a strong circumstance in favor of the validity of the will.  The testimony is very conflicting.  The testimony offered by the proponent was sufficient to warrant the jury in finding that the testator was of sound and disposing mind when he made the will, and that the making of it was not brought about by any undue influence.  There was sufficient testimony offered by the contestants, if believed, to have sustained a verdict in their favor, had one been returned.  The jury having

given credit to the testimony of the proponent and her witnesses, and the judge who presided at the trial having indorsed the finding of the jury, by refusing to set the verdict aside, we are not justified under the evidence in disturbing it.   The judgment is

AFFIRMED.

THE other judges concur.