IN RE ESTATE OF LEWIS HALL LAFLIN.
EUGENE B. LAFLIN, APPELLEE, V. GUY F. LAFLIN, APPELLANT.

FILED APRIL 11, 1922. NO. 22002.

1. **Wills: MENTAL CAPACITY.** The mental capacity of a testator is tested by· the· state of his mind at. the time'he executed his will.
2. ——————: ——————.· In the contest of a will on the ground of in-

In re Estate of Laflin.

competency, it does not necessarily follow as a matter of law from proof of temporary, mental infirmities before and after the testamentary date that the jury should be permitted to pass on the state of testator's mind at that time, in absence of proof that there was then a mental disturbance.

3. ——: ——. If a testator knows the extent and character of his property, the natural objects of his bounty, and the purposes of his devises and bequests, he is mentally competent to make a will.

4. ——: ——: PEREMPTORY INSTRUCTION. Where the evidence in the contest of a will on the grounds of mental incompetency and duress is insufficient to sustain a verdict in favor of contestant on either of those issues, a peremptory instruction in favor of proponent is not erroneous.

APPEAL from the district court for Johnson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*Burkett, Wilson, Brown & Wilson* and *Jay C. Moore,* for appellant.

*Hugh J. Dobbs* and *Rinaker, Kidd & Delehant, contra.*

Heard before DAY, DEAN, FLANSBURG and ROSE, JJ.

ROSE, J.

This is a proceeding commenced in the county court of Johnson county by Eugene B. Laflin, proponent, to probate the will of Lewis Hall Laflin, who died at his home near Crab Orchard, Johnson county, March 7, 1920. The will was executed June 4, 1919, when testator was 77 years of age. He was a widower and left surviving him five children and two children of a deceased daughter. The name and age of each of the children of testator follow: Eugene B. Laflin, 51; Edith Laflin Lovitt, 45; Guy F. Laflin, 44; Clay Laflin, 38; Katherine Laflin, now Damon, 32. All were married at the time of testator's death except Katherine, who was married afterward. The children of the deceased daughter of testator are Fred A. McMichael and America McMichael Sikyta, both of mature age and married. In his will testator gave to each of his children both personal property and real estate. To each of the children

of the deceased daughter he made a small bequest, explaining he had previously aided their parents; their father also being deceased. These two grandchildren had in fact 160 acres of valuable land, each owning an 80-acre tract and other property. In addition to bequests of money and other personalty, testator devised to his son Eugene 80 acres of land in Johnson county and 6 lots in Crab Orchard; to his daughter Edith a life estate in 160 acres of land in Johnson county and the estate in remainder to her children; to his son Guy a life estate in 80 acres of land in Johnson county and a lot in Crab Orchard and the estate in remainder to children of Guy, if any, otherwise to Lewis E. Laflin, a son of Eugene B. Laflin and a grandson of testator; to his son Clay a life estate in 160 acres of land in Gage county and the estate in remainder to Clay's children, if any; to his daughter Katherine a life estate in 160 acres of land in Johnson county and 4 lots in Crab Orchard and the estate in remainder to her children, if any, otherwise in equal shares to her surviving brothers and sister. There was also a devise of 2 vacant lots in Beatrice to a grandson of testator, Hugh Laflin, a son of Clay Laflin. This is a mere outline of the principal devises, the will itself being long and elaborate. In the county court Guy F. Laflin, contestant, a son of testator, objected to the probating of the will and instituted a contest on the grounds of incompetency and duress. Upon a hearing the objections were overruled and the will admitted to probate. Contestant appealed to the district court, where a jury was impaneled to try the issues of fact. After both sides had adduced testimony at great length the trial court directed a verdict in favor of proponent. From a judgment that the will offered for probate is the will of testator, contestant has appealed.

There was a formidable argument on the proposition that the trial court erred in directing a verdict in favor of proponent. While there is no direct evidence that testator was wanting in mental capacity when he made his will

June 4, 1919, it is insisted he was often unbalanced mentally both before and after that date, and that under all of the circumstances the jury should have been permitted to pass on his competency at the time he attempted to exercise testamentary powers. . Is this position tenable?

The mental capacity of testator to make the will offered for probate is tested by the state of his mind at the time that instrument was executed. His fatal malady was Bright's disease. He had been in failing health for a year or more before his death. His mind was sometimes seriously affected by uremic poisoning. At times he was not in a condition to make a will, but this state of mind was not continuous. It occurred at intervals as the result of uremia. At other times he was master of his mental faculties.

It does not necessarily follow as a matter of law from evidence of temporary mental infirmities before and after the date of the will that the jury should be permitted to pass on the state of testator's mind at that time, in absence of any proof that there was then a mental disturbance. There was positive evidence that he was in full possession of his mental faculties when he made his will. Testator's oldest son was a capable lawyer and was successful and prosperous. He is a devisee. He offered his father's will for probate. The filial and professional relations between father and son were becoming to both. Testator passed by this son at Crab Orchard, Johnson county, March 31, 1919, and with a son-in-law went to Beatrice, the county seat of Gage county, there inquired about the professional standing of Hugh J. Dobbs as a lawyer, engaged him to draw his will, gave him the necessary data for that purpose, and executed the will. after it had been drafted to conform to testator's wishes. In this will, which was executed April 1, 1919, the disposition of agricultural lands corresponded generally to prior, undelivered deeds in possession of testator at the time, and to the present will. The data for the bequests of personal property were given by testator from memory April 1, 1919. He thus disposed of

his money, household goods, farm implements, live stock, books and keepsakes without forgetting any one having a natural claim upon his bounty. This will was deposited in the county court at Tecumseh. Later testator, desiring to change it in a few minor particulars, withdrew it May 31, 1919, went alone on a train to Beatrice early in June, 1919, and engaged Hugh J. Dobbs to rewrite it. Testator furnished from memory the necessary data for the changes desired. He nominated a different executor, made slight changes in the disposition of some of the personal property, devised vacant town lots to another grandson, and made other minor changes, but left his devises of farm lands, comprising the bulk of his estate, practically unchanged. This will was executed June 4, 1919, and is the will in controversy. The evidence shows conclusively that testator then knew the extent and character of his property, the natural objects of his bounty, and the purposes of his devises and bequests. These are the tests of mental capacity to make a will. Dobbs testified there was no trace of insanity; that testator's language was perfectly coherent and that his thoughts seemed to be; that witness had drawn many wills. He testified further:

"I never drew a will where the maker took so complete charge of all that was done as in this case."

Testator was a sturdy character. He transacted business intelligently both before and after he made his will. The terms of that instrument correspond generally to former testamentary intention at a time when his mental capacity was not in question. He possessed and managed an estate worth perhaps $100,000 and retained it to the last moment of his life. His will, in view of surrounding circumstances, shows mental acumen and paternal love. The oldest son had accumulated a considerable estate and had demonstrated his ability to manage property successfully. He was the only child to whom farm land was devised in fee, and his tract was limited to 80 acres, while each of three other children was remembered to the extent of 160 acres. Contestant, it is true, was limited to a life

estate in 80 acres, but the reasons for this are obvious. He had been married many years and was childless. He had been improvident. His father had given him a home and the use of land, but with a start in life he had been unable to accumulate property. As late as 1915 he suffered from excessive use of intoxicating liquors. Expenses of his folly sometimes fell upon his father. He had amiable qualities, however, and retained his father's affections. He was not disinherited. On the contrary he was bequeathed $1,500 in money, a greater sum than any brother or sister will receive in cash. Provision is thus made for his present needs. In addition, his father left him a home and 80 acres of land for life—the means of a permanent livelihood. The reasons behind these provisions of the will arose in a disposing mind.

In an opinion of reasonable length the able counsel cannot be followed through all the details of evidence, covering, as it does, over 1,000 pages of the record. The outstanding facts deducible from the evidence as a whole are conclusive. The evidence is wholly insufficient to sustain a finding that testator was wanting in testamentary capacity when he made his will or that any undue influence operated on his mind during that solemn act.

The trial court, therefore, properly directed a verdict sustaining the will.

AFFIRMED.