IN RE ESTATE OF THOMAS BAYER.
ANNA HAMILTON ET AL., APPELLANTS, V. ANTON M. BAYER
ET AL., APPELLEES.

FILED DECEMBER 12, 1929. No. 27016.

*Lewis C. Paulson,* for appellants.

*C. P. Anderbery* and *King & Bracken, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ.

DAY, J.

This is a proceeding which has for its object the allowance for probate of an instrument as the last will of Thomas Bayer, deceased. The county court allowed the instrument as the will, but upon appeal to the district court it was found not to be such will, which finding was reversed by this court *(In re Estate of Bayer,* 116 Neb. 670) and the cause was remanded for a new trial. The case is here again for review after a second trial in which the will was found not to be the last will and testament of the deceased. The widow and three children of deceased appear as proponents of said will, while three other children appear as contestants. Thomas Bayer died April 20, 1924, leaving a widow and seven children. The will in dispute was executed November 18, 1922. There is no question as to the proper execution of the will, but the contestants urge that when the will was made the deceased did not have sufficient mental capacity to make said will, and that it was the result of the exercise of undue influence. The proponents contend that the evidence is not sufficient to sustain the finding of the jury against the allowance of said instrument for probate, either as to lack of sufficient mental capacity, or upon the question of undue influence.

In this state the burden is upon the proponents of a will to prove, not only the execution of the will, but the capacity of the testator. In *Seebrock v. Fedawa,* 30 Neb. 424, it was said: "It is the duty of the proponents in the first instance to offer sufficient testimony of the capacity of the testator to make out a *prima facie* case." We are not prepared to say that, where the proponents prove the testator to have been capable of transacting ordinary business, he is required to go further in order to make a *prima facie* case of testamentary capacity. The proponents having established a *prima facie* case as to the testamentary capacity of the deceased, it is necessary, in order to defeat the will, that the contestants introduce sufficient evidence to overcome the presumption arising out of the *prima facie* case made by proponents. The burden of proof does not shift, but the burden of going ahead, as some authorities put it,

does. The rule above stated in *Seebrock v. Fedawa, supra,* is approved in the following authorities: *In re Estate of Kubat,* 109 Neb. 671; *Steinkuehler v. Wempner,* 169 Ind. 154, 15 L. R. A. n. s. 673; *In re Estate of Sweeney,* 94 Neb. 834. The question directly before us in this case is whether, upon the proponents having established a *prima facie* case, the contestants offered any evidence tending to prove mental incapacity sufficient to sustain the verdict of the jury. If the evidence relating to mental capacity to make a will is conflicting, the issues of fact are questions for the jury. *In re Estate of Kerr,* 117 Neb. 630. The defeated litigants in the contest of a will are not entitled to a trial *de novo* on appeal to the supreme court, but upon such appeal the issues of fact are determined by the sufficiency of the evidence to sustain the verdict. With this rule in mind, we have searched the record diligently to discover whether or not there was evidence to support the finding of the jury in this case. There is no evidence in the record that Thomas Bayer, deceased, was of unsound mind, either at the time of the execution of this will, at his death, or at any intervening time. Not only is there an absence of proof of testamentary incapacity; but, giving the testimony the construction most favorable to the contestants, their testimony seems to indicate that the deceased was of sound mind at all times from the execution of his will to his death. It shows that he knew the extent and character of his property, the natural objects of his bounty, and the purposes of his devises and bequests. This is sufficient to render him mentally competent to make a will. *In re Estate of Kubat,* 109 Neb. 671, citing and following *In re Estate of Laflin,* 108 Neb. 298.

We reached this conclusion without reference to, or consideration of, the evidence offered in rebuttal by the proponents for the will. It consists of the testimony of more than 20 of the prominent citizens of the town in which the deceased lived, who were personally acquainted and closely associated with him, and who testified that he was a man of sound mind, capable of attending to his business, and did attend to it, up almost to the day of his death. At

his death he was 92 years of age, and it was stipulated in the record that he was a "strong man physically, and that he was in good health up to the time he died." This court said at the time the case was here previously: "The trial court should have withdrawn the question of competency from the jury, the evidence in the record being wholly insufficient to sustain a finding in favor of the contestants on that issue." *In re Estate of Bayer,* 116 Neb. 670. It is now argued here that the evidence before the court at this time is different, although a large part of it was read from the evidence of the previous trial. We do not deem it necessary that we compare the records in the two cases, with a view to determine such question, but we have determined, solely from the record now before us, that the question of the testamentary competency of Thomas Bayer should have been withdrawn from the jury in this case, inasmuch as there is no conflicting evidence or disputed question of fact to be submitted to a jury upon this issue for their determination. *In re Estate of Kubat, supra; In re Estate of Kerr,* 117 Neb. 630.

The second question presented to us for our consideration is whether the purported will was executed as a result of undue influence. It is charged by the contestants that one of the proponents, a son of the deceased, exerted undue influence upon the testator, with the result that the instrument is not the last will and testament of the deceased. The burden of proving this contention is ordinarily upon the contestants, and competent proof is required that the said will was procured by undue influence in order to set it aside. *In re Estate of Dovey,* 101 Neb. 11. In *In re Estate of Wilson,* 114 Neb. 593, the rule is set out as follows: "Where it is alleged that the execution of a will was procured by undue influence, the burden is upon the party alleging it to establish that the testator was induced by improper means to dispose of his property differently from what he intended." The following cases are cited: *Seebrock v. Fedawa, supra; Boggs v. Boggs,* 62 Neb. 274; *In re Estate of Dovey,* 101 Neb. 11; *In re Estate of Fenstermacher,* 102 Neb. 560; *In re Estate of Kees,* 114 Neb. 512; 40 Cyc. 1150.

The proponents challenge also the sufficiency of the evidence to sustain the verdict of the jury with respect to the question of undue influence, and we are again required to search the record with respect to this issue to determine whether or not, with the most favorable view of the evidence to the contestants, they have established that the will was the result of the undue influence of John J. Bayer. Undue influence must be such as damages the free agency of the testator, at the time the will was executed. Mere supposition of undue influence is not sufficient to carry the case to the jury, but it must appear by proof, or by fair inference to be drawn from the facts established, that there was undue influence. *In re Jackson's Estate,* 220 Mich. 565. In respect to the execution of this will, there is not any testimony tending to prove that undue influence was exerted upon the testator by his son, John J. Bayer. The only evidence in the record that can be construed as intimating an undue influence is that of one of the daughters, and this evidence was not with respect to this will but relative to a deed that was given to the son in January 1921, sometime previous to the execution of this will, and three years before the testator died. At the time this deed was recorded, and all the children knew about it, this daughter testified that she spoke to him with reference to it and that he said: "Child, I will tell you the honest to God's truth, I had to have peace the rest of my life, he left me no rest and I had to do the like." This is the only evidence we have found in the record to support the contention of undue influence, and it was concerning a matter not relating to the will, which occurred three years before the death of the testator. This deed was not called in question during the life of the testator. The contestants in this case do not suggest that while he was living he lacked the mental capacity to transact his own business. For three years John J. Bayer was in possession of the land in question, with the deed recorded, a fact known to all of the contestants in this case. The thought suggests itself to us that, if Thomas Bayer, at such time, was not mentally competent to transact his own business, and was being imposed upon

by this son, the contestants in this case were negligent in their filial duty to their father, in not rallying to his relief at that time. The picture developed by the entire record in this case is of a strong, vigorous man, able to look after his own business, and so self-confident of that fact as to have brooked no interference from his children or or any one else. The record in this case, filled with petty family quarrels, most of which have arisen with this contest, and which it is hoped will be forgotten when it is ended, fails to disclose evidence sufficient to support a finding of the jury that the will was the result of undue influence exerted by John J. Bayer, and the question of undue influence exerted, as well as the question of testamentary capacity, should have been withdrawn from the jury. If sufficient evidence has not been introduced in a case upon the issue of undue influence to raise a question of fact upon conflicting evidence, then the court should direct a verdict. "Where the evidence in the contest of a will, on the ground of mental incompetency and duress, is insufficient to sustain a verdict in favor of the contestant on either of those issues, a peremptory instruction in favor of proponents is not erroneous." *In re Estate of Laflin,* 108 Neb. 298. The cause should not be submitted to the jury as an invitation to them to substitute their judgment as to the proper disposition of the property for that of the testator, and thus deny him the right to control his property while living, and to direct by will its use after his death.

In conformance with the foregoing opinion, the judgment is reversed and the cause remanded, with directions to enter judgment admitting the will to probate as the last will and testament of Thomas Bayer, deceased.

REVERSED.