IN RE ESTATE OF J. C. THOMASON.
CHARLES THOMASON, PROPONENT, APPELLANT, V. MARY ELIZABETH DANIEL, CONTESTANT, APPELLEE.
13 N. W. 2d 141

FILED FEBRUARY 25, 1944.  No. 31592.

*William S. Padley, R. E. Bannister* and *Herbert W. Baird,* for appellant.

*W. A. Stewart, Jr., contra.*

CARTER, J.

This is an appeal by Charles Thomason, proponent and executor of the will of J. C. Thomason, deceased, from a verdict and judgment finding that the testator was incompetent to make a will.

It appears that J. C. Thomason, commonly referred to in the evidence as Carl Thomason, was past the age of 78 years when he executed his will on March 6, 1941. He died on April 11, 1942. On June 5, 1942, the county court of Dawson county admitted the will to probate and an appeal was taken to the district court by Mary Elizabeth Daniel, the granddaughter of the testator. From a verdict and judgment finding the testator to have been incompetent when he executed his will the proponent appeals.

The record shows that Carl Thomason left surviving him two brothers, Charles and Jimmie; two half brothers, Robert and Jake; a half sister, Mary Ann Anderson; his granddaughter, Mary Elizabeth Daniel; and a great-granddaughter, Joe Eller Daniel. By his will he gave $200 to his brother Jimmie; to his two half brothers, Robert and Jake, $200 each; to his half sister, Mary Ann Anderson, $200; to his granddaughter, Mary Elizabeth Daniel, $1; to his great-granddaughter, Joe Eller Daniel, $1; and to his brother Charles and his wife Augusta, the residue of the estate in equal shares.

The evidence shows that Carl Thomason was born in Camel county, Kentucky, and lived in or near Glasgow, Barren county, Kentucky, most of his life. He engaged in farming, dealt some in real estate and engaged in other

ventures which enabled him to accumulate considerable property, the exact amount of which the record does not disclose. He was married three times. He had a daughter by his first wife, who is known in this record as Bess Atkinson. Mrs. Atkinson was the mother of Mary Elizabeth Daniel. He had a son by his second wife who passed away in a Veterans' Hospital at the close of the first World War. Carl Thomason continued to live in Kentucky until his third wife passed away in 1938. At that time his daughter, Bess Atkinson, was managing a store in Dalhart, Texas. Arrangements were made for Carl to go to Dalhart, Texas, to live with his daughter. For approximately 19 months they lived together at the Gushwa Hotel in Dalhart. In 1940 Mrs. Atkinson accepted the management of a store at Alliance, Nebraska, and in August of that year Carl Thomason also went to Alliance to live with his daughter. Shortly thereafter Mrs. Atkinson was taken ill, was taken back to Dalhart and in January, 1941, she passed away. Thereafter Carl lived with his granddaughter, Mary Elizabeth Daniel, for a short period and then requested Charles Thomason, his brother, to come and take him to his home in Cozad, Nebraska. This was done and Carl Thomason thereafter lived with Charles Thomason and his wife Augusta until his death.

The evidence produced resolved itself into a question as to the competency of Carl Thomason to make a will on March 6, 1941. The proponent produced the four persons who witnessed the execution of the will and signed as attesting witnesses, each of whom testified that they knew the testator during the 15 months he lived in Cozad and to facts indicating that testator was competent to make a will. Many other persons who knew the testator while he lived in Cozad testified to similar effect. The testimony of several witnesses who knew him for many years when he lived in or near Glasgow, Kentucky, was to similar effect. It cannot be questioned, and the appellee so concedes, that the evidence produced by the proponent is sufficient, if believed by the jury, to sustain the competency of the testator to make

the will. It is urged by the contestant, however, that the evidence on the question of testator's competency is conflicting and, consequently, a question for the jury. The material questions to be decided are, first, is the evidence of the contestant sufficient to sustain the finding of the jury, and second, if so, is the record free from error prejudicial to the rights of the proponent?

The evidence tending to show the incompetency of Carl Thomason was largely that of witnesses who knew him while he lived at the Gushwa Hotel in Dalhart, Texas. He lived at this hotel from October, 1938, to May, 1940. From May, 1940, to August, 1940, he and Mrs. Atkinson resided with Mary Elizabeth Daniel near Dallas, Texas. The evidence of these witnesses is generally to the effect that his mind rambled, that he had difficulty concentrating his thoughts, that he was inclined to talk in circles and make contradictory statements, that he acted rather foolish and childish at times, that he had moody and depressed spells, that he was very eccentric, that on one occasion he attempted to commit suicide with a gun, and many other similar statements tending to establish incompetency. Some of these witnesses testified, however, that testator was incompetent only at times while he lived in Dalhart.

There is much evidence in the record tending to show that Carl Thomason was competent to make a will during the time he lived at Cozad. The evidence shows generally that he continued to be mentally competent up to the very day of his death. One witness, C. T. Young, president of the local bank and an attesting witness to the will, testified that he was well acquainted with the testator through daily contact and from conversations and business transactions which he detailed. He was of the opinion that Carl Thomason was thoroughly competent prior to and at the time of the execution of the will. After a similar recitation of facts W. E. Young, cashier of the local bank and an attesting witness to the will, testified that Carl Thomason understood thoroughly the transactions pertaining to his business and that he knew exactly what he wanted done.

The only evidence in the record coming from a physician is that of Dr. L. H. Fachtman of Cozad. The testator called at his office in April or May, 1941, regarding a minor disability, at which time a rather extended examination and consultation was had. The doctor's evidence is to the effect that Carl Thomason was at that time mentally competent. His testimony was also to the effect that any despondency or mental incapacity evidenced while he was in Dalhart, Texas, had disappeared. This witness stated that despondency and mental shock are not unusual in persons following the death of a wife, husband or other close relative and that they have a tendency to continue until the persons become better reconciled and compensated to new surroundings and new environments. It was the opinion of Dr. Fachtman that Carl Thomason had entirely recovered from the condition testified to having existed in Dalhart, Texas, at the time he examined him in his office.

Many other witnesses were called who had known the testator while he lived at Cozad and their evidence was all to the effect that he was mentally competent. The only possible exception is the evidence of Jimmie Thomason that Carl was not himself, that he was not jolly and was not telling stories as usual. This was not, of course, evidence of testamentary incapacity.

From an examination of all the evidence we conclude that Carl Thomason, at the time he made his will, understood what he was doing, knew the extent of his property, remembered all of his relatives, understood the disposition he was making of his property, and was cognizant of the natural objects of his bounty.

There is evidence in the record as to the reasons he apparently had for giving the bulk of his property to his brother Charles and wife. It appears that he had given his daughter, Mrs. Atkinson, considerable sums of money during her lifetime, one gift being in the sum of $5,000. It appears also that he had given his granddaughter $819 on one occasion, in addition to many small gifts of $5 or less. It appears that Carl Thomason thought he was entitled to a

return of two time certificates after the death of his daughter, which he had given her. Some difficulties arose over this matter which were never adjusted to Carl Thomason's satisfaction. It was the contention of Mary Elizabeth Daniel that her father was handling her mother's estate and that she had no way of complying with her grandfather's wishes. Whatever the merits of the controversy may have been, Carl Thomason evidently lost his affection for his granddaughter, failed to answer her letters and never communicated with her again. Whether Carl Thomason was justified or not, it was evident he intended that Mary Elizabeth Daniel should not receive any of his property upon his death, something that he had a right to do if he was competent to make a will.

It also appears from the evidence that Carl Thomason was well satisfied with the home and surroundings provided by Charles Thomason and wife. He told several witnesses that he was going to leave the bulk of his property to Charlie and that he had made a will to that effect. It is true, also, that he had indicated to his other brother and half brothers that he was taking care of them in his will and to some he stated that he was dividing his property equally between them. We do not think that these partially conflicting statements necessarily indicate incompetency. Such statements are often made for the purpose of maintaining peace and tranquility in the family. While such statements constitute proper evidence, they are by no means conclusive, and when the competency of the testator, as here, is established as of the time the will was made, they must necessarily be disregarded. *Davidson v. Davidson*, 2 Neb. (Unof.) 90, 96 N. W. 409.

We think the evidence conclusively shows that Carl Thomason was competent to make a will. The evidence of all the people who knew him around Cozad prior to and after the will was executed was to that effect. All of his old friends and relatives in Kentucky who had known him most of his life testify that he was the same as ever when he visited them in the summer of 1941, after the will in

question had been executed. The conclusiveness of this evidence is such that we must conclude he had fully recovered from the disability with which he was afflicted during his stay at Dalhart, Texas. Assuming that his mental condition was such as stated by the witnesses who knew him in Dalhart until he left there in May, 1940, such evidence is not sufficient to sustain a finding of incompetency as against the evidence of all those who knew him from January, 1941, until his death, that he was mentally sound and competent to execute a will on March 6, 1941. It must be borne in mind that Carl Thomason had been away from Dalhart, Texas, for ten months before he executed the will in question, excepting only a short period immediately preceding his daughter's death. In view of the evidence in this record by those who knew him from January, 1941, until his death in April, 1942, the only conclusion that can be reached is that Carl Thomason had recovered from any mental disability that troubled him when he lived at Dalhart, Texas. We necessarily conclude that a directed verdict for the proponent should have been granted.

In a similar case we said: "It is clear that, even though there is a small amount of evidence to support the contestant's claim of incapacity, that is not alone sufficient to require the court to submit that issue to the jury, for there is a clear, decided, and overwhelming preponderance of evidence showing that the testator was of sound mind and disposing memory at the time he executed the will. He knew the amount and character of his property; he knew his other relatives, but had decided he wanted his brother Jim to have his farm. He told several people of his desire, and the court is convinced that this was an intelligent disposition of his property." *In re Estate of Frazier*, 131 Neb. 61, 267 N. W. 181.

Also, in *In re Estate of Laflin*, 108 Neb. 298, 187 N. W. 885, we said: "It does not necessarily follow as a matter of law from evidence of temporary mental infirmities before and after the date of the will that the jury should be permitted to pass on the state of testator's mind at that time,

in absence of any proof that there was then a mental disturbance."

In *In re Estate of Bayer*, 119 Neb. 191, 227 N. W. 928, we said: "Where a will is contested upon the ground that, at the time of its execution, the testator was of unsound mind, the proponents having established a *prima facie* case that the testator was of sound mind, contestants must introduce sufficient evidence to support a contrary finding by the jury, and, unless the evidence is conflicting there is no disputed question of fact for the court to submit to the jury."

We are of the opinion that the evidence shows that Carl Thomason, at the time he executed his will, understood and appreciated the nature and extent of his property, his relation to the persons who were the natural objects of his bounty and that he fully understood the import of his act in executing his will. This being true, he was competent to make a valid will. *In re Estate of Frazier, supra.* A testator who is competent to make a valid will may dispose of his property as he pleases. The law does not require that he recognize any of his relatives, lineal or otherwise. Whether or not Carl Thomason was justified in doing what he did in his will is of no concern of the courts if he had the mental capacity to make a valid will. The evidence being ample to sustain his mental capacity to so do, and there being no evidence of his mental incapacity at the time he executed his will sufficient to sustain a verdict finding that he lacked testamentary capacity, the trial court should have withdrawn the question from the jury and directed a verdict for the proponent of the will.

The judgment of the district court is reversed and the cause remanded for further proceedings in conformity with this opinion.

REVERSED.