NANCY D. MONROE, APPELLEE, V. MARY A. HUDDART, APPELLANT.

FILED JULY 12, 1907.   No. 14,899.

1. **Wills:** SPOLIATION: PAROL EVIDENCE. Alterations of any sort made in a will by a stranger to it, without the knowledge of the testator, have no effect whatever, and the intrument must be admitted to probate as it stood originally. Such changes are a mere spoliation, and parol evidence will always be received to show the original contents of the will.

2. ———: EXECUTION: PROBATE. The attestation clause is not a necessary or material part of a will, and the fact that the name of the testatrix is incorrectly given therein does not affect the validity of the will, and probate thereof should not be denied where the subscribing witnesses are clear in their testimony that all statutory requirements were observed in its execution.

APPEAL from the district court for Otoe county: PAUL JESSEN, JUDGE. *Affirmed.*

*C. W. Seymour* and *John C. Watson,* for appellant.

*Pitzer & Hayward, contra.*

DUFFIE, C.

September 12, 1904, Mrs. Matilda Diener made her will, of which M. C. Joyce, then county judge of Otoe county, was the scrivener. She died in Otoe county, Nebraska, December 4, 1904, at the age of 67 years, leaving surviv-

ing her a husband, John C. Diener, two daughters, Mrs.
Mary A. Huddart, the contestant, and Mrs. Nancy D.
Monroe, the proponent, wife of Dr. Hackman Monroe, and
a granddaughter, Ida M. Halverson, the child of a
deceased daughter. By the terms of the will the contest-
ant, Mary A. Huddart, was given the sum of $5, the
residue of the estate going to the daughter Nancy, with
a request that if the husband survive the testatrix he
be cared for as long as he lived, and also that she provide
a home for the granddaughter, Ida Halverson, as long
as she remained single. This will was admitted to pro-
bate in the county court, and, on appeal taken by Mrs.
Huddart, the district court also entered an order
admitting the will to probate. The particular objections
urged by the contestant are (1) that the judgment of the
district court is not sustained by sufficient evidence; (2)
that the findings and judgment of the court are contrary
to the law and evidence; and (3.) that the judgment
should be for the appellant and against the appellee.

The evidence is convincing that Mrs. Diener, at the
time of making the will, was of sound and disposing mind
and was not subject to any undue influence. Two objec-
tions to the probate of the will, urged with great con-
fidence by the contestant, are the following: The third
paragraph of the will, as originally written, is in the
following language: "Third. I hereby give, devise and
bequeath to my daughter Mrs. Monroe Hackman all the
rest and residue of my estate, both real and personal,
wherever found, with this request, that if my husband
John C. Diener survives me that she care for him as long
as he shall live and that she provide a home for my grand-
daughter Ida Halverson as long as she shall remain
single." The fourth paragraph of the will is in the
following words: "Fourth. I hereby appoint my daughter
Mrs. Monroe Hackman executrix of this my last will and
testament, hereby revoking all former wills by me made."
The will was written in the office of the county judge,
and there were present Mrs. Diener, the testatrix, John

C. Diener, her husband, Mrs. Nancy Diener Monroe, the daughter described in the third and fourth paragraphs of the will as "Mrs. Monroe Hackman," and Ida Halverson. Judge Joyce, who drew the will, on being asked how Mrs. Diener designated to him the person who is named as "Mrs. Monroe Hackman," answered: "She called her 'my daughter Nancy,' pointing to her daughter. Q. Was she in the room at the time this talk occurred? A. She was. Q. Will you state to the court how the name came to be written in the will as 'Mrs. Monroe Hackman' originally? A. I would state that Mrs. Matilda Diener told me what she wished to give to her daughter Nancy, and my understanding, as I stated before, was that it was Mrs. Monroe Hackman, so I wrote it on the typewriter, and brought it in and read it over to her in the presence of Mrs. Monroe and Miss Halverson, and it was further read by Mrs. Diener herself." Some time after this will was executed the county judge learned that he had made a mistake in designating the daughter Nancy as "Mrs. Monroe Hackman," instead of "Mrs. Nancy Diener Monroe," and drew a pen through the word "Hackman," and inserted between the words "Mrs." and "Monroe" with pen and ink the two words "Nancy Diener," so that the third paragraph of the will, as it now appears, and as it appeared when offered for probate, is as follows: "Third I hereby give, devise and be-

　　　　　　　　Nancy Diener
queath to my daughter Mrs. ⋀ Monroe ~~Hackman~~ all the rest and residue of my estate, both real and personal, wherever found, with this request, that if my husband John C. Diener survives me that she care for him as long as he shall live and that she provide a home for my granddaughter Ida Halverson, as long as she shall remain single." A similar change was made in the fourth paragraph of the will, so that it now appears as follows: "Fourth. I

　　　　　　　Nancy Diener
hereby appoint my daughter Mrs. ⋀ Monroe ~~Hackman~~ executrix of this my last will and testament, hereby revok-

ing all former wills by me made." No erasure of the word "Hackman" was made by the county judge, but a pen was drawn through the name, leaving the word "Hackman" clearly discernible, so that the will as originally written is apparent to every one. In this condition the judgment of the trial court adjudging the will valid will be taken as probating the will as originally signed and attested, and not as including those marks and interlineations which the evidence clearly shows was no part of the will as originally drawn.

What is the effect of this alteration, or, as it is called by some authorities, this "spoliation," made in the will by the scrivener? Mr. Page defines an alteration as "a change in the words of a will, by addition, or erasure, or both, made by the testator, or some one acting under his authority, after the execution of the will." Page, Wills, sec. 298. "Spoliation" he defines as "a change in the wording of a will, made after execution by one who is neither the testator nor is authorized by him"; or the total "destruction of a will by some one other than testator or one authorized by him." Sec. 300. The rule governing spoliation by a stranger to the will he gives in the following words: "The effect of a spoliation depends upon who changes the will or causes it to be changed. If a stranger to the instrument change it, such spoliation is a nullity. The part inserted by the stranger is disregarded. The part erased by him is to be read as it was originally written, if it is possible, either from the will itself or from extrinsic evidence, to determine the words originally employed." Sec. 301. This rule is supported by *Miles' Appeal,* 68 Conn. 237; *Thomas v. Thomas,* 76 Minn. 237; *Holman v. Riddle,* 8 Ohio St. 384. 1 Underhill, Law of Wills, sec. 267, gives the rule in the following language: "Alterations of any sort made in a will by a stranger to it, without the knowledge of the testator, have no effect whatever, and the instrument must be admitted to probate as it stood originally. Such changes are a mere spoliation, and parol evidence will always be received

to show the original contents of the will." The evidence is undisputed and conclusive that Judge Joyce made the alteration, without the knowledge or consent of the testatrix, and the court did not err in receiving such evidence or in allowing the will to probate as originally drawn and executed.

There remains one other objection urged by the contestant. The true name of the testatrix is *Matilda* Diener, and the will is so signed. In the attestation clause her name is written *Malinda* Diener. If the attestation clause were a necessary and material part of the will the objection would be serious. The purpose of the formal attestation is to make a *prima facie* case that the acts therein recited have all been properly done when proof of the signature of the witnesses is made. Mr. Dame says: "The attestation clause is not, of itself, necessary to make a will valid. The instrument may be probated when it contains no clause whatever—merely the signature of the witnesses —provided their evidence shows that they signed it in the presence of the testator, and that the formalities required by the statute have been actually complied with." Dame, Probate and Administration, sec. 27. Under a statute similar to our own the supreme court of Michigan has announced the same doctrine. *Ferris v. Neville,* 127 Mich. 444; *Lautenshlager v. Lautenshlager,* 80 Mich. 285. See, also, Page, Wills, sec. 223. In *Williams v. Miles,* 68 Neb. 463, the eleventh paragraph of the syllabus is in the following words: "Hence the subscribing witnesses to a lost will may testify that the testator signed and they witnessed and subscribed in the required manner, without proving that there was an attestation clause, or establishing the contents thereof." The witnesses to the will in this case were positive in their testimony that they signed the instrument on request of the testatrix, that it was signed in her presence, and that she declared it to be her last will and testament.

We discover no error in the record, and recommend an affirmance of the judgment.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.