IN RE ESTATE OF JANE A. DOVEY.
GEORGE OLIVER DOVEY ET AL., APPELLEES, V. GEORGE E.
DOVEY, APPELLANT.

FILED MARCH 16, 1917. No. 19223.

1. **Wills: SETTING ASIDE: UNDUE INFLUENCE: BURDEN OF PROOF.** When it is shown that a will has been signed and attested by the statutory number of witnesses, and it is conceded that the testator was of sound mind, the will is presumed to be valid. In order to set it aside on the ground that it has been procured by undue influence, competent proof is required, and the burden of proof is ordinarily upon the contestant.

2. ———: PROBATE. If the facts in evidence justify the belief that the instrument was the result of the volition and expressed intentions of the testatrix, that the disposition of her property is not opposed to natural justice or contrary to or opposed to the usual considerations which move reasonable minds in such matters, and that it may as well have been the result of love and affection as of influence, solicitation or coercion, a finding is justified that the will expresses the true intention of its maker.

3. ———: EXECUTION: PROOF. The due and proper execution of a will may be proved by the testimony of the attesting witnesses, even though the attesting clause is excluded from the consideration of the jury.

4. ———: PROBATE: TRIAL: WITHDRAWAL OF EVIDENCE. It is within the discretion of the district court to admit or reject evidence of declarations made by the testatrix some four or five years before the execution of the will to the effect that she did not intend to make a will, and under the evidence in this case it was not prejudicial to withdraw such testimony from the jury.

5. ———: ———: VERDICT: SUFFICIENCY OF EVIDENCE. Where the evidence in behalf of the contestants tending to establish the existence of undue influence is specifically denied by the witnesses for the proponents, a verdict that the will was valid will not be disturbed for lack of evidence.

APPEAL from the district court for Cass county: JAMES T. BEGLEY, JUDGE. *Affirmed.*

*John L. Webster,* for appellant.

*C. A. Rawls, contra.*

LETTON, J.

This is a contest over the probate of the will of Jane A. Dovey. The contestants allege that the testatrix, by reason of old age and weakness caused by continued illness, was not possessed of sufficient mental capacity to make a will, and that at the time it was made she did not understand its contents. It is also alleged that it was executed by reason of improper and undue influence exerted upon her by E. G. and G. O. Dovey, her grandsons, who are the sole devisees in the will, and by their parents and other members of the family of H. N. Dovey; that, by reason of her great age, weakness and mental condition, she was easily influenced and her mind was poisoned against the objectors, her sons, George E. Dovey and Oliver C. Dovey, without cause or provocation, and she was thereby deprived of her free will and agency. The will was executed on April 24, 1913. At that time Mrs. Dovey was 86 years of age, was suffering to some extent from enlargement of the arteries and from severe pains in the back of her head, and, while able to walk about the house, she was so infirm that she had to be carried up and down stairs. She died November 20 of the same year. She was totally blind for several weeks before her death and her eyesight had been failing for some months, but there is no evidence to show that at the time the will was executed she was not fully competent to make a will. For some months after the date of the execution of the proposed will she read the daily papers, conversed intelligently, was interested in current events and in local happenings, and showed no signs of mental incompetency. Mrs. Dovey had three sons, George E., Horatio N., and Oliver C. Dovey. Prior to 1909 these brothers had carried on a mercantile business in Plattsmouth, which was started by the father E. G. Dovey, and after his death was still continued under the name of E. G. Dovey & Son. In 1909 dissension arose among them and litigation ensued, but the evidence is undisputed that each of the sons and

their families maintained pleasant relations with the grandmother until her death. For 25 years after the death of her husband she lived in the family of her son Horatio and continued to live there until the time of her death. Testimony was introduced to show that several years before, on at least two occasions on being spoken to with reference to disposing of her property by will, she said she would not make a will, that her deceased husband was opposed to wills, and that she would not make one. This evidence was taken from the consideration of the jury by oral and written instructions of the court as being too remote. The will contains a provision charging the legatees with the maintenance and support of their mother "of the character to maintain the station in life which she has always occupied." The proponent E. G. Dovey testified that his grandmother requested him to go to Omaha to have the will prepared for her, telling him what disposition she wanted to make of her property; that he went to Omaha and had the proposed will prepared by a lawyer of that city, and that when he returned he gave the will to his grandmother. This was on April 19, 1913. On April 24 Mr. Walling, a friend of the family, was called to the home at the request of Mrs. H. N. Dovey, proponent's mother. He testifies that he went upstairs to the room where Mrs. Jane E. Dovey was sitting. She handed him the paper, and at his suggestion she named two friends whom she desired to act with him as witnesses to the will. These ladies were then called by telephone. When they arrived Mrs. Dovey told them that the paper she had was her will, signed it in their presence, and asked them to sign as witnesses, which they did. They each testified that she appeared to be of sound mind and competent to act. A short time before this George E. Dovey, the oldest son of Mrs. Dovey, had procured a will to be prepared by which his mother devised all her property to Mr. Horatio N. Dovey, the father of the proponents, or to Horatio and himself, as to which the record is not

quite clear. He gave this proposed instrument to Horatio Dovey and asked him to have it executed by his mother, but this was never done. In May, 1913, he also procured a bill of sale of his mother's property to be made conveying it to Horatio and himself, and asked Horatio to have his mother sign this. Soon afterwards it was returned to him by Horatio, who testifies he never presented it to Mrs. Dovey. George E. Dovey testifies that he then took the bill of sale and went to Horatio's home to see his mother. That Mrs. H. N. Dovey accompanied him upstairs to Mrs. Dovey's room. When he presented the bill of sale Mrs. Dovey refused to sign it, saying she would sign no more papers, and Mrs. H. N. Dovey said that "mother has signed about all the papers she had ought to sign." Mrs. Dovey denies making this statement.

The testimony is undisputed that the writing of the proposed will and its execution was not communicated by E. G. Dovey or his mother, Mrs. H. N. Dovey, to any other member of the family until after Mrs. Dovey's death, when Mr. Walling was called by Mrs. H. N. Dovey, given the key to Mrs. Jane E. Dovey's bureau, and asked to get the papers. He found the will in an envelope, as he had sealed it and indorsed it on the day he had executed it. It was filed for probate that day.

The testimony of Mrs. Patterson, a daughter of George E. Dovey, that every time she went to visit grandmother Dovey she was never left alone with her, but some member of the family of H. N. Dovey was present, is directly contradicted by Mrs. H. N. Dovey. Testimony that Mrs. H. N. Dovey some time before told Mrs. Oliver C. Dovey, "I tell you I have got grandma now where she does just what I say," is also contradicted by Mrs. H. N. Dovey. At the hearing the contestants offered no evidence as to Mrs. Dovey's soundness or unsoundness of mind, and did not bring her sanity into question, so that the only matter in issue between the

parties is as to whether the execution of the will was brought about by undue influence.

The first assignment of error is that the court erred in permitting several witnesses for the proponents to testify as to the mental capacity of Mrs. Dovey to make the will. At the trial the contestants admitted that Mrs. Dovey was mentally competent to make a will at the time the instrument was executed, hence this complaint was waived. Moreover, there is ample testimony on this point to support the will.

The second assignment of error is that the court erred in refusing to permit the contestants to prove by Mr. Walling that the will was not read to Jane A. Dovey. This exclusion was on cross-examination. The witness had just testified twice on direct examination that the will was not read over to her before she signed it, and that all he knew about it was that she made the statement that she had read it.

The third assignment of error is that the court erred in admitting the will without the attesting clause. Since the proof of execution was sufficient otherwise, this was not essential. *Monroe v. Huddart;* 79 Neb. 569. The fourth and sixth have reference to the exclusion of evidence. The same facts were established by other testimony, and there was no prejudicial error in the rulings complained of.

It is complained that the court erred in refusing an instruction to the point that undue influence may be exercised by one not a beneficiary under the will. Instruction No. 9 expressly told the jury: "Proof of undue influence may be circumstantial and inferential, and the influence may be that of a third person as well as that of a direct beneficiary under the proposed will, or by both in conjunction." There is no ground, therefore, for this complaint.

It is insisted in assignment No. 10 that the court erred in its instructions Nos. 7 and 8, relating to what constitutes undue influence and the degrees of evidence necessary to sustain the charge of undue influence.

In re Estate of Dovey.

The seventh and eighth assignments of error are that the court erred in withdrawing from the jury by oral and written instructions statements and declarations of Mrs. Jane A. Dovey that she had not made and did not intend to make a will. That George E. Dovey himself placed little weight upon these declarations is evidenced by the fact that before this will was executed he endeavored to procure a will drawn by his own attorney to exclude his brother Oliver from a share in the estate, to be executed by his mother. This will was given to Horatio to be presented to her. This he never did. While we are satisfied the evidence might properly have been received, it was so remote in point of time that its admission or rejection lay within the discretion of the district court, and it was not prejudicial error to withdraw its consideration from the jury.

Counsel for appellant are in error with respect to the scope of the instructions. The court did not withdraw from the jury the declaration, which George testified was made in May after the will was signed, to the effect that she had signed her name to all the papers she was going to sign. In cases of this nature declarations made by the testatrix within a reasonable time prior or subsequent to the making of the will, material to the inquiry, may be considered upon the question of undue influence. We are satisfied that no error would have occurred if this testimony had been admitted in the discretion of the district court, but we are also satisfied that no prejudicial error occurred by its exclusion. The proof shows that these remarks were made more than four years before the will was executed, and before controversy and litigation arose between the three sons arising out of their relations as partners in the business of E. G. Dovey & Son. It was after this time that the relations between Oliver and his brothers George and Horatio became strained and dissension arose. Under the circumstances it is not strange that Mrs. Dovey changed her mind. The fact alone that she

In re Estate of Dovey.

devised her property to her two grandsons, for whom she had love and affection, was not an unnatural or unusual disposition of her property, or enough to convince an unprejudiced mind that the will was the result of undue influence.

After stating that the contestants alleged that there was undue influence used upon Mrs. Dovey, which resulted in her signing the proposed will, against her intention and against her real wish and will, and that it devolved upon the contestants to so prove by a preponderance of the evidence, before the jury would be warranted in finding the proposed will invalid for that reason, the court said in instruction No. 7: "In this connection you are instructed that the term 'undue influence' means such influence as compels or induces a person to do that which is against her real wish and desire, either from fear, desire for peace, or from some feeling which at the time she is not able to control. What would amount to undue influence in one case and vitiate a will of a testatrix would not necessarily be so considered in another case. In that regard every case stands or falls upon the peculiar facts and circumstances surrounding it, as the same may be established by the evidence. In any case, however, the undue influence necessary to vitiate a will must be such as to amount to moral force destroying the free agency of the testatrix and substituting another person's will for her own. There must be proof that the purported will was obtained by such undue influence and that the circumstances of its execution are inconsistent with any other hypothesis but undue influence."

Instruction No. 8 is as follows: "You are instructed that not all influence exerted upon a testatrix on the making of her will is undue or unlawful. Lawful influence arising from legitimate family and social relations may produce irregularities in the disposition of property which may work an apparent hardship, but neither advice, argument or persuasion so bestowed will avoid a will made freely and from convictions held

by the testatrix, although such convictions be the result of such advice, argument or persuasion. To render influence undue it must subvert the free agency of the testatrix."

It is strenuously insisted that instruction No. 7, in so far as it states that "undue influence necessary to vitiate a will must be such as to amount to moral force destroying the free agency of the testatrix and substituting another person's will for her own," and that "there must be proof that the purported will was obtained by such undue influence and that the circumstances of its execution are inconsistent with any other hypothesis but undue influence," is an erroneous statement of the law. It is conceded that these ideas are first found in the jurisprudence of this state in *Latham v. Schaal*, 25 Neb. 535. It is said that the language is found in the syllabus and not in the body of the opinion, and was, therefore, prepared by a reporter and not by the court. But the reporter's note at the beginning of the volume states that the syllabi in this volume were prepared by the judge writing the opinion, in accordance with rule 18, and the practice of this court for very many years has been to make the syllabus as much the decision of the court as the opinion itself. Like statements of the law in instructions were approved in *Seebrock v. Fedawa*, 30 Neb. 424, 437, opinion by Norval, J., and cases from Wisconsin, Ohio, New York and Michigan are cited in the opinion to sustain the proposition; in *Boggs v. Boggs*, 62 Neb. 274, opinion by Pound, C.; in *Stull v. Stull*, 1 Neb. (Unof.) 389, opinion by Oldham, C., and in concurring opinion by Pound, C., p. 399; and in *Spier v. Spier*, 99 Neb. 853. Practically the same theory is stated in *Knox v. Knox*, 95 Ala. 495. And in *Schieffelin v. Schieffelin*, 127 Ala. 14, an instruction that, in order "to set aside a will of a person of sound mind for having been obtained by undue influence, it is not sufficient to show that the circumstances attending its execution are consistent with the hypothesis of its having been obtained by undue in-

fluence," but "it must be shown that they are inconsistent with a contrary hypothesis, and the undue influence exercised in relation to the will itself," was held proper.

There can be no doubt that, where there is testamentary capacity, a finding that undue influence has been exerted will not be supported merely by evidence that some person had an opportunity to exert or was possessed of influence over the testator. It must be made to appear, where there is no express evidence, by a justifiable and fair inference from the facts proved that such influence was exerted so as to dominate and control the will of the testator, and caused a testamentary disposition to be made of his property other than that which he would have made if uninfluenced. An inference of undue influence which induced the testator to do that which he would not otherwise have done must be established by a preponderance of the evidence and must exclude any reasonable inference. *Schuchhardt v. Schuchhardt*, 62 N. J. Eq. 710. Almost the exact language of the instruction complained of was used by the Lord Chancellor in *Boyse v. Rossborough*, 6 H. L. (Eng.)   *2, *50.

In *Latham v. Schaal, supra*, the language is credited to the case of *Maynard v. Vinton*, 59 Mich. 139. In a later case, *Bush v. Delano*, 113 Mich. 321, it is said that this language stated an incorrect rule, that the proof to establish undue influence need only amount to a preponderance of the evidence. A Missouri case is to the same effect. *Gay v. Gillilan*, 92 Mo. 250.

We are content to abide with the law as formerly announced, and hold that the instruction is not erroneous as applied to the facts in this case.

It is contended that the fact that the execution of this will was kept a secret from the sons of Mrs. Dovey until after her death is a strong indication of the exercise of undue influence. E. G. Dovey testifies that he saw the will prepared by an attorney at the instance of George E. Dovey and delivered to his father,

in the bank, and thinks he read it. It would be human nature, knowing the desire of his uncle George to have Mrs. Dovey, the testatrix, execute a will making a different disposition of her property, to keep the knowledge of the actual will from him in order to avoid any attempt on his part to change the disposition of the property. The close business relations existing between his father and George E. Dovey probably kept E. G. Dovey and his mother from telling his father, Horatio N. Dovey, of the will. The other legatee was not aware a will had been executed until after the death of his grandmother.

Taking the evidence as a whole, we are convinced that it supports the verdict of the jury. At the time Mrs. Dovey made the will the three sons were apparently each possessed of a competency. The two young men to whom she left her property had been born and grew up in the home where she resided. A strong bond of love and affection existed between them. It is a well-known fact that grandparents are more indulgent and more apt to overlook the faults of their grandchildren than their own parents are. Mrs. Dovey was a woman of strong mind. Her intellectual capacity was unimpaired at the time the will was made. There is no evidence of any restraint or compulsion being brought to bear upon her or that she was deceived in any way. She lived in full possession of her mental faculties for months after the will was made, and never at any time manifested a wish or desire to change it; on the contrary, she stated to her son George in response to his request to sign a conveyance of her personal property that she would sign no more papers. Knowing the relations between her three sons as she did, we think there was nothing unnatural or suspicious in the fact that Mrs. Dovey gave to her grandsons her estate, imposing upon them the duty of caring for their mother in whose home she had lived so many

years.  We find no prejudicial error in the record, and the judgment of the district court is

AFFIRMED.

SEDGWICK and HAMER, JJ., dissent.