IN RE ESTATE OF DORA J. ADEN.
CHRISTY J. ADEN, APPELLEE, v. GEORGE J. ADEN ET AL., APPELLANTS.
279 N. W. 794
FILED MAY 27, 1938. No. 30324.

 

*John J. Ledwith, Jay C. Moore* and *Robert S. Finn,* for appellants.

*Lewis C. Westwood* and *Raymond B. Morrissey, contra.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

PAINE, J.

This is a will contest, where the principal questions involved were valid execution and undue influence. The court found there was insufficient evidence to submit these questions to the jury, and upon motion of the proponent, after all the evidence had been taken, the court instructed the jury to return a verdict that exhibit No. 1 was the last will and testament of Dora J. Aden, deceased. From this verdict and the order directing the county court of Johnson county to admit said will to probate, the five children and one grandchild of Dora J. Aden, deceased, have appealed to this court.

The contestants maintain that the evidence shows that the will was not duly and properly subscribed, attested, and executed, and that there was evidence of undue influence practiced upon his mother by Christy J. Aden; that this evidence was of such a character and nature concerning this will and its execution that reasonable minds might draw different conclusions, and that therefore the trial court should have submitted all of these questions to the jury. These are the principal errors alleged for reversal, and each is set out in several different forms. Another allegation is that the court erred in finding for the proponent on the issue of testamentary capacity.

It cannot be disputed that the burden is upon the proponent of a will of establishing that the statutory requirements concerning the manner in which wills must be executed have been strictly and fully complied with.

It was also held by this court in the case of *In re Estate*

*of Smith,* 130 Neb. 739, 266 N. W. 611: "The attestation required of witnesses to a will consists in their seeing that those things exist and are done which the statute requires to exist or to be done in order to make the instrument, in law, the will of the testator."

Dora J. Aden executed the will in controversy September 22, 1932, in the First State Bank at Sterling, Nebraska. The witnesses were R. F. Frerichs, Otto H. Stuve, and John R. Winter, said men being the president, the cashier, and the assistant cashier of such bank. President Frerichs died before the will was probated, the testatrix having died February 16, 1937. Cashier Stuve testified that he had known the testatrix over 40 years, but he does not remember anything regarding Mrs. Aden executing this will. He identified his signature as a witness, but stated that he could not recall the event. He also identified the signatures of the other two witnesses, and stated that, to the best of his recollection, the will was executed in the back room of the bank. He further testified that the testatrix was of sound mind at the time of the execution of the will. He testified that he did not recall whether her son, Christy J. Aden, was with her at the time of the execution of the will or not. John R. Winter, the assistant cashier, testified that he knew Mrs. Aden, and that he observed Mrs. Aden sign the instrument in his presence; that she asked all three witnesses to sign it as witnesses; that the attestation clause was typed on the paper at the time, and was below where she signed and above the signatures of the witnesses; that he read the attestation clause at that time, and that the statements now there were there then; that those statements of the attestation clause state the facts.

Now let us examine in greater detail the evidence of Otto H. Stuve, who appeared only in the county court upon the hearing when the will was admitted to probate, and very briefly answered a few questions in relation thereto. When the trial was had in the district court on appeal, it was stipulated that such witness was around Grand Island and could not be present, and that his testimony given in the

county court could be offered and received in evidence and read to the jury. He testified that at the time the will was written he was cashier of the First State Bank of Sterling; that he had known Dora J. Aden practically all his life, at least for 40 years; that she lived in the west edge of the town of Sterling. But he did not recall the occasion of signing that particular instrument, saying: "I mean by that, we witnessed a good many instruments and I don't remember any one in particular." He testified that he was familiar with the testatrix' signature, and identified her signature thereon, but did not remember her signing it. He testified that the testatrix was able to and did transact her own business; that she did business at their bank, and that he saw her once every week, or once every two weeks, and that she was of sound mind at that time. At the close of this direct evidence given in the county court, Mr. Ledwith stated that there would be no cross-examination.

In the direct evidence of Christy J. Aden, who is charged with exercising undue influence over his mother, he testifies that he did not know that his mother had made a will until after her death, when he received the notice of the county judge to appear in court, and denies the testimony of his brother William that he knew of it before that time. He positively denies that his mother ever talked to him about making a will; that he never tried to run her business, and he always considered her competent to manage her own affairs.

On cross-examination he testified that he left home when he was married, 16 years before the trial; that he saw her about once a week, and perhaps they telephoned back and forth once a day, and sometimes two or three times a day. He admitted that his mother had instituted a suit to collect a note against a deceased son's estate, and that she received a settlement of $1,600 or $1,700 thereon, but that he did not know how much money his mother had on hand at the time of her death. He testified that his mother owed a lot of back taxes, and owed accounts which she had paid up after she received this money.

On redirect examination Christy J. Aden testified that two or three months before his mother's death she started to tell him she had made a will, and he told her he did not want to hear anything about it; that it was her property, and she could do with it just as she saw fit, and that he did not care what she did with it.

George J. Aden, a contestant, testified that there had been an estrangement between him and his mother for six years before her death; that one time his mother showed violent anger and went into a kind of a fit, and since that occasion six years ago he thought it was better to keep away from his mother for the sake of her health.

Dr. W. L. Morrill testified that there was nothing wrong with her mind, that she was able to transact her own business, to know her own property, and that she had capacity to know to whom she wanted to leave her property.

At common law, attestation of a will was not necessary. Such requirement, in order to make valid the execution of a will, is purely statutory. The purpose of having disinterested witnesses is so that the testator may be entirely free from importunity of interested persons, and that a witness may be available to testify as to the mental condition of the testator. "Attestation, it has been said, consists in the act of witnessing the performance of the statutory requirement to valid execution. Subscription is the signing of the witnesses' names upon the same paper, for the sole purpose of identification, and implies that attestation has been performed. The one is mental, the other mechanical. Under this view there may be a perfect attestation in fact without subscription." 28 R. C. L. 123, sec. 78.

Wills have been admitted to probate where the testator's name was improperly given in the attestation clause, and it has been held that the attestation clause is not a necessary or material part of a will. *Monroe v. Huddart,* 79 Neb. 569, 113 N. W. 149; *In re Estate of Dovey,* 101 Neb. 11, 162 N. W. 134.

Section 30-205, Comp. St. 1929, provides the formalities required in executing a will in Nebraska. After the testa-

tor has signed the same, it must be attested and subscribed by two or more competent witnesses; "and if the witnesses are competent at the time of attesting the execution of the will, their subsequent incompetency, from whatever cause it may arise, shall not prevent the probate and allowance of the will, if it be otherwise satisfactorily proved."

This court has recently discussed many questions relating to the due execution of wills in the case of *In re Estate of Kajewski, ante,* p. 485, 279 N. W. 185, released April 15, 1938. It was there held:

"The burden of proving that a will resulted from undue influence is ordinarily upon the contestants who assert it.

"Mere suspicion of undue influence upon the testator * * * is not sufficient to require a submission of the issue to a jury, or to sustain a verdict for the contestants." In this late case it is held: "The question of undue influence should be submitted to the jury when the circumstances attending the execution of the will are such that reasonable minds might conclude from the evidence that it was not the voluntary act of the testator." And it was held that the trial court erred in submitting the issue of undue influence and testamentary capacity to the jury, and the judgment was reversed.

In the case of *In re Estate of Frazier,* 131 Neb. 61, 267 N. W. 181, it was held that, if a verdict against a will would have to be set aside as against the weight of the evidence, then that issue should not be submitted to the jury. It was further held: "To justify the direction of a verdict on competency of the testator, it is not necessary that there should be literally no evidence thereon, but it is sufficient if there is none which ought reasonably to satisfy the jury that the incompetency alleged has been established."

In the case at bar, the president of the bank, to whom the testatrix went to have her will prepared, took her into the back room of the bank and, using a standard blank of a short-form will, carefully prepared the will. He then called to the back room of the bank the cashier and the assistant cashier, and the three men were present when the testatrix

signed the will, and each of the three men then signed as a witness. The one who prepared the will, and knew the most about its preparation, is dead. The attestation clause is proper, the signatures of the testatrix and of the three witnesses are not questioned, but the contestants endeavor to deny this will probate on the ground that one of the witnesses fails to recollect certain details of what occurred at the time of signing on the ground that he witnessed a good many instruments and he did not remember any one in particular, but his present lack of an independent memory of the details is not sufficient in the minds of the court to discredit this witness. The attestation clause states all of the necessary legal requirements in Nebraska.

In *Holyoke v. Sipp,* 77 Neb. 394, 109 N. W. 506, it is held: "A presumption of the due execution of a will arises from the presence of an attestation clause which recites the facts necessary to the validity of the will, and, in the absence of evidence discrediting the statements, the will should be admitted to probate." In the text a quotation is made from 1 Underhill, Law of Wills, sec. 201, which states in brief that, if a subscribing witness is unable to recollect some or all of the facts attendant upon the execution of the will, yet a presumption of due and proper execution will arise from the recitals of a perfect attestation clause, which becomes conclusive in the absence of proof to the contrary, and in the case at bar there is an absolute lack of proof of any fact which discredits the execution of this will, and on the other hand there is no contest whatever as to the genuineness of the signatures of the testatrix or of the three witnesses. See *German Evangelical Bethel Church v. Reith,* 327 Mo. 1098, 39 S. W. (2d) 1057, 76 A. L. R. 604; *In re Claflin's Will,* 75 Vt. 19, 52 Atl. 1053, 58 L. R. A. 261; *Tyson v. Utterback,* 154 Miss. 381, 122 So. 496, 63 A. L. R. 1188; *Hauer v. Hauer,* 45 S. Dak. 103, 186 N. W. 566; *Lott v. Lott,* 174 Minn. 13, 218 N. W. 447.

In the opinion of the court, there being no sufficient evidence of a lack of any statutory requirement in the execution of this will, or of the presence of undue influence in

the execution thereof, the trial judge was justified in instructing the jury to return a verdict for the proponent.

AFFIRMED.