In re Estate of Stuckey.

## In re Estate of William A. Stuckey.
### Royal S. Stuckey et al., Appellants, v. William A. Stuckey, Jr., Appellee.

Filed February 10, 1921.   No. 21138.

1. **Wills: Undue Influence.** An unequal distribution of property among the children of testator, of itself, raises no presumption of the exercise of undue influence. Undue influence, in order to invalidate a will, must be of such character as to destroy the free agency of the testator and substitute another person's will for his own.

2. **Appeal: Harmless Error.** A judgment will not be reversed because of the exclusion of evidence, when it clearly appears that its exclusion, if error, was without prejudice to appellant.

3. **Rulings of the court on instructions to the jury approved.**

4. **Evidence** *held* sufficient to sustain the verdict.

Appeal from the district court for Fillmore county: Ralph D. Brown, Judge. *Affirmed.*

*Claude S. Wilson* and *John K. Waring,* for appellants.

*Charles H. Sloan, F. W. Sloan* and *T. J. Keenan, contra.*

Morrissey, C. J.

Appellants, Royal S. Stuckey and Lucy Virginia Barrett, filed objections in the county court for Fillmore county to the probate of the last will and testament of their father, William A. Stuckey, Sr. Their objections were overruled and an appeal was taken to the district court. A number of objections to the probate of the will had originally been made, but at the beginning of the trial in the district court counsel for contestants stated that contestant's sole contention was that the will had been executed by testator while laboring under undue influence. On this narrow issue the cause was submitted to a jury, which returned a verdict in favor of proponent, and contestants have appealed.

105 Neb.—41

The will was executed November 12, 1915. Testator died August 1, 1917, being 75 years of age at the time of his death. Throughout his life testator had been a strong, robust man, and was a farmer by occupation. He had twice married. Contestants are the children of the first marriage, while proponent is the sole surviving child of the second marriage. When the will was drawn, each child was married and was maintaining a home separate and apart from the parents. Royal S. Stuckey was about 45 years of age, Mrs. Barrett was about 47, and proponent about 33. Testator was a man of large means for a man in his occupation. He had given each of his children good school advantages, and had also given each property, the exact amount of which is not shown, but it was a considerable amount, and the family, including the second wife and her step-children, had from the date of his second marriage until the time of his fatal sickness lived in apparent harmony.

In June, 1915, testator was suddenly stricken with bowel trouble. Miss Wessenburg, a trained nurse, was immediately engaged, and she took charge of the case and remained as the nurse in charge until his death. Following the bowel trouble other complications arose and he never was a well man after June, 1915. It is claimed by contestants that testator's mind was affected, and his power of resistance reduced by his suffering, and also by the brandy and opiates administered; that, while he was sick and suffering, his wife, taking advantage of his condition, coerced him into making the will, under the terms of which Royal S. Stuckey received property of approximately the value of $43,000, Mrs. Barrett received property of approximately the value of $46,000, proponent, William A. Stuckey, Jr., received property of approximately the value of $105,000, while the widow, proponent's mother, received property of approximately the value of $52,000. As William A. Stuckey, Jr., was the only heir of his mother, who is now deceased, he and his mother were granted under the terms of the will $65,000 or $75,000 more than was

given to the contestants. This discrimination, it is claimed, was due to the importunities of the wife. Testimony was offered to show that before testator was stricken with his fatal sickness his wife had from time to time urged him to make a will, insisting that a man with "two families" and possessed of so much property ought to make provision for the disposition of the property after his death. It is said that while in good health he resisted her entreaties, but that after he was weakened by disease, and after she had alternately threatened and prayed, she overcame his better judgment. In support of this there is the testimony of witnesses who recite conversations they overheard between Mr. and Mrs. Stuckey, and the testimony of a witness or two who saw Mrs. Stuckey at his bedside with the Bible open before her, and who say that she told testator that he could not expect repose in the life to come if he refused her request. On the other hand, the deposition of Mrs. Stuckey was taken, and she denied having exercised any undue influence upon her husband. She admitted having asked him if he left the "home place" to her son, but further than that she denied knowledge of the contents of the will. It is not claimed that proponent exercised any undue influence.

In order to fully appreciate the issues, it is necessary to consider still another question presented by this appeal. From the time Miss Wessenburg was called in attendance upon Mr. Stuckey she kept history sheets of the case. These sheets are so prepared that the nurse makes a record of the day and year, the hour of the day, the pulse, temperature, respiration, medicine administered, and entries of such general remarks as to her seem warranted. Some time after these history sheets were made, and when to the nurse they appeared to have no value, she put them into the stove, intending to destroy them, but there was no fire in the stove at the time and the history sheets were taken therefrom by one of the contestants, and delivered to contestants' attorney. The deposition of the nurse was taken on behalf of proponent, and contestants' attorney appeared

and cross-examined her at length. He produced these history sheets, which the witness identified as the ones she had made, and he cross-examined her in relation to the record thus made. She nowhere contradicted the history sheets, but in some instances explained the entries made. Counsel indulged the fullest latitude in the cross-examination. The history sheets were marked as an exhibit; but, in place of having this bundle of sheets attached to and made a part of the deposition and transmitted in the usual way to the clerk of the district court, counsel for contestants had it sealed in an envelope, properly marked so as to indentify it, and left it with the notary public, who kept the exhibit until counsel was about to depart for Fillmore county to engage in the trial of this case, when the notary delivered this envelope to him. He carried it to Fillmore county, and when proponent offered the deposition contestants offered this exhibit as part of the deposition. On objection by proponent it was excluded, and this ruling is now urged as error. The statute, section 7947, Rev. St. 1913, provides that a deposition "shall be sealed up and indorsed with the title of the cause and the name of the officer taking the same, and by him addressed and transmitted to the clerk of the court where the action or proceeding is pending." It also provides that it shall there remain under seal until opened by the clerk, by order of the court, or at the request of one of the parties or his attorney. Counsel for contestants maintain that this statute does not include an exhibit. He also says that, the exhibit having been properly indentified, he was free to offer it as independent evidence.

We prefer to dispose of the case on its merits, rather than on some technical rule of evidence, and, as these history sheets were made a part of contestants' bill of exceptions, we have examined them to ascertain if their exclusion militated against contestants. We fail to find anything in them that contradicts or discredits the testimony of Miss Wessenburg, or that strengthens the case of contestants. Early in testator's sickness many opiates

were administered and some brandy, much diluted, was given. The witness was cross-examined in relation to this period and her testimony corresponds with the history sheets. July 23, 1915, after testator had been sick about one month, he executed a will. He underwent an operation shortly thereafter, and both prior to and shortly after the making of this will several opiates were administered. Apparently the operation brought him some temporary relief, for thereafter, until December, the history sheets show no opiates administered. The second will, the one in controversy, was executed November 12, 1915. The terms of the second will are, generally speaking, the same as those of the first will, except that contestants receive a slightly greater allowance, the widow is given a greater share of the personal property, and proponent receives a correspondingly lesser share under the second will than under the first, and some other minor changes were made. The will was witnessed by the nurse, Miss Wessenburg, by the cashier of a local bank, in which bank testator was a stockholder, and by testator's personal attorney who drafted the second will. Each of these witnesses testified to testator's mental capacity and ability to execute the document, and he lived for many months after its execution. The mere inequality of the legacies is not sufficient, of itself, to raise a presumption of undue influence. The testimony offered does not show that the wife dictated the terms of the will, or in fact that she knew its terms. Judges may regret that a parent makes unequal disposition of his property among the natural objects of his bounty, but it is not always given to judges to know the reasons for the action taken, and, were courts to set aside wills because property was not distributed in equal shares, the statute which expressly confers the right to make bequests and devises by will would be nullified.

There is one further matter presented in the brief, where it is argued that testator did not read the will, that it was not read in his presence, and that he did not know its contents. This is perhaps beside the real issue, but it is

just as well to dispose of it now. While there appears to be some basis for the argument in the brief, the testimony shows to the contrary. At any rate the testimony on this point is sufficient to sustain the verdict.

A number of assignments deal with instructions, some given, others refused. These assignments have been considered; but, when the whole charge given by the court to the jury is considered in the light of the issues raised and the evidence given, we find the record free from error, and the judgment is

AFFIRMED.