IN RE ESTATE OF JOHN F. KEES.
FREDERICK D. KEES ET AL., APPELLEES, V. FRITZ D. KEES, APPELLANT.

FILED APRIL 9, 1926. No. 23958.

1. Wills: CONTEST: BURDEN OF PROOF. In an action to set aside a will because of improper or undue influence exerted upon the testator, the burden of proof is ordinarily upon contestant. *In re Estate of Fenstermacher*, 102 Neb. 560, followed.

2. ———: ———: DIRECTION OF VERDICT. Evidence examined, and *held* that the court did not err in peremptorily directing the jury to return a verdict sustaining the will.

APPEAL from the district court for Gage county: LEONARD W. COLBY, JUDGE. *Affirmed.*

*Pemberton & O'Keefe,* for appellant.

*Hazlett, Jack & Laughlin* and *Sackett & Brewster, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

DAY, J.

This is an appeal from a judgment of the district court of Gage county admitting to probate the will of John Frederick Kees, who died February 2, 1923. The will was

executed November 14, 1919, and a codicil thereto dated September 21, 1920. The proponent, Frederick. D. Kees, was named as executor in the will and also one of the legatees. The contestant, Fritz D. Kees, is a nephew of the testator, being a son of John Berkhardt Kees, a deceased brother of the testator.

The contestant alleged lack of mental capacity on the part of the testator to make the will and also that the will was made by reason of improper and undue influence exerted by the proponent upon the testator.

At the close of the testimony the trial court directed the jury to return a verdict sustaining the will and codicil and, upon this being done, entered judgment accordingly. It is earnestly urged by the contestant that the court erred in thus directing the jury.

It appears that the testator emigrated from Germany to the United States in 1864, and finally located, in 1867, on a farm near Filley in Gage county, Nebraska, where he lived until his death. By exercising the virtues of economy and industry and with the help of a good wife, he accumulated considerable fortune and at the time of his death had property of the approximate value of $60,000. His wife died in 1902 and the couple were childless. After the death of his wife, testator lived on the farm, making his home with his tenants, except occasionally spending a part of the winter at an hotel in Beatrice.

The father of the testator had five children, all born in Germany. Besides testator, they were Frederick D. Kees, of Beatrice, John George Kees, of Nebraska City, John Berkhardt Kees, who remained in Germany, and Ernestina Bock, who also remained in Germany. Frederick D. Kees, the proponent, located in Beatrice and became a prominent and successful business man. He had three children. John George Kees located in Nebraska City, and, while a man of good character and standing, did not prosper financially as did his brothers, the testator and the proponent. He had several children, among them a son who was crippled. John Berkhardt Kees died in 1918 leaving four children,

viz., Fritz D. Kees, the contestant, of Beatrice, George Kees, of Chicago, Jean Kees and Henrietta Kropp, both of whom remained in Germany. Ernestina Bock, the testator's sister, died in Germany, in 1920. She had four children, two of whom, Frederick and John Bock, came to the United States and located in Kansas, and two, Daniel and George, remained in Germany. George died survived by a second wife and a son, Fritz Bock, a child by his first wife.

.After making the usual provisions with respect to the payment of debts, funeral charges and expense of administration, the will provided that the residue should be divided among the testator's relatives as follows: To John George Kees, a brother, one-fourth; to Frederick D. Kees, a brother, one-fourth; to the children of Frederick D. Kees, John, Clara and Daniel, equally one-fourth; to Ernestina Bock, a sister, one-fourth. The will also made provisions for a further distribution of the share devised to Ernestina Bock in the event of her death. It will be observed that the heirs of John Berkhardt Kees are not remembered in the distribution of the testator's estate, and the contestant is one of them.

At the time of the execution of the will, the testator was between 84 and 85 years of age, and although somewhat enfeebled by years and a stroke of paralysis, which affected his articulation, he was mentally alert and was perfectly able to understand and transact his business. All of the witnesses who testified on this subject agreed that his infirmity did not affect his mental capacity. In fact, we do not understand that the contestant seriously urges the lack of mental capacity to make the will, except that his weakness rendered him more susceptible to undue influence. Under the evidence there can be no doubt that the testator had the mental capacity to make the will.

Was the will the result of improper and undue influence exerted by the proponent upon the testator? The testimony upon this phase of the case is entirely to the effect that no undue influence was exercised by any one in procuring the execution of the will. The testimony shows

that the testator went alone to the office of his attorney, who had been his counselor for years, and told him the disposition he desired to make of his property, and thereupon the will was drafted and executed in accordance with his wishes. The proponent testified that he had never talked to the testator concerning the disposition of his property and did not know of the contents of the will until it was opened after the testator's death; that testator told the proponent it was his wish that proponent be his executor, but aside from that he knew nothing about the will. It appears in evidence that, for a number of years prior to the death of the testator, the proponent managed one of the farms owned by the testator. Proponent looked after all the details pertaining to the management of the farm, such as renting the property, keeping it in repair, paying the taxes and collecting the rent. The money so received would be credited to the account of the testator on the business books of the proponent. This farm was sold, however, before the testator's death. The management of the home farm where the testator lived was looked after by himself. It appears that at one time the testator had made a will in which his brothers and sister were placed on a parity as the recipients of his bounty, but after the death of John Berkhardt Kees, in 1918, the present will was executed in 1919, over three years before testator's death. If the will as written did not express the wish of the testator, it would seem that he had ample time to change it. During that period he frequently called at the store of the nephew, the contestant, and visited with him.

The most that can be said in support of the contestant's theory of undue influence is that an opportunity was afforded proponent to influence the testator, coupled with the fact that in 1905 the testator had made a codicil in which he named his brothers and sister as equal beneficiaries, and the further fact that testator in 1910, while on a trip to Germany, stated that all his relatives should share in his estate. The will recited: "In omitting from this will those of my relatives who are not named herein, I am not un-

mindful of such omissions, nor are such omissions on account of any hostility of feeling or lack of friendliness but for reasons which are sufficient to me."

The question of undue influence in the making of wills has been frequently before this court, and it has been held that the burden of proof is ordinarily upon the party who alleges undue influence to prove that fact. In *In re Estate of Stuckey*, 105 Neb. 641, it was held: "An unequal distribution of property among the children of testator, of itself, raises no presumption of the exercise of undue influence. Undue influence, in order to invalidate a will, must be of such character as to destroy the free agency of the testator and substitute another person's will for his own." In *In re Estate of Fenstermacher*, 102 Neb. 560, it was held: "In an action to set aside a will because of improper or undue influence exerted upon testatrix, the burden of proof is ordinarily upon contestant." In *In re Estate of Dovey*, 101 Neb. 11, it was held: "When it is shown that a will has been signed and attested by the statutory number of witnesses, and it is conceded that the testator was of sound mind, the will is presumed to be valid. In order to set it aside on the ground that it has been procured by undue influence, competent proof is required, and the burden of proof is ordinarily upon the contestant." In *Boggs v. Boggs*, 62 Neb. 274 it was held: "The burden is upon the contestants to establish undue influence, and in so doing it is not enough to show that the circumstances attending execution of the will are consistent with the hypothesis of its having been obtained by undue influence; it must be shown that they are inconsistent with a contrary hypothesis."

Under this will, one-half of the testator's estate is given to the proponent and his children, who according to the evidence are prosperous and financially well fixed, while other relatives in far less favorable circumstances are omitted. Whatever may be our individual views of the justice of the will, it must be conceded that, where capacity exists and no undue influence is exerted, a man has the legal right to

dispose of his property, except as restricted by law, as he sees fit.

In the light of the foregoing authorities, there is no aspect which may be taken of the evidence in which it may be said that undue influence entered into the execution of the will. This being true, it was proper for the court to direct the jury to return a verdict sustaining the will. The judgment of the district court is

AFFIRMED.