IN RE ESTATE OF HENRY G. HEINEMAN.
GORDON C. HEINEMAN ET AL., APPELLEES, V. LENA ARGA-
BRIGHT ET AL., APPELLANTS.

13 N. W. 2d 569

FILED MARCH 17, 1944. No. 31718.

*Merril R. Reller* and *John McArthur*, for appellants.

*Frank A. Hebenstreit, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE,
YEAGER, CHAPPELL and WENKE, JJ.

CARTER, J.

This is an appeal by the contestants of the will of Henry G. Heineman, deceased, from an order directing a verdict in favor of the proponents of the will and ordering the will admitted to probate.

Contestants allege that Henry G. Heineman did not have testamentary capacity to make a will on March 15, 1939, the date of the purported will. They further allege that the purported will was the result of the undue influence of proponents upon Henry G. Heineman at the time of its execution and that, for this reason, the purported will is not that of Henry G. Heineman.

The record shows that Henry G. Heineman, the testator, lived his entire life in Richardson county and died on November 10, 1942, at the age of 83 years. He had never married and his heirs at law consisted of a brother, two sisters, the children of a deceased brother and the children of a deceased sister. The proponents of the will were three brothers, Roy, Gorman and Keith Heineman, nephews of the deceased. All of the real estate owned by Henry G. Heineman was conveyed by deeds to the proponents of the will and their wives prior to his death. The will has the effect of giving the residue of the personal property to the proponents of the will.

The evidence shows that at the time the will was executed on March 15, 1939, Henry G. Heineman was living with a brother, the father of the proponents. It appears that on March 15, 1939, the proponents and Henry G. Heineman went to the office of a lawyer in Falls City where Henry G. Heineman executed the will in question. Proponents were not present during the ceremonies necessary to the execution of the will. The evidence is that they were in the hall outside the lawyer's office at the time. The witnesses to the will, two disinterested persons having only a casual acquaintance with Henry G. Heineman, testified to all acts necessary to the execution of a valid will and to the further fact that testator appeared to be mentally competent and to understand the import of what he was then doing. There

is no evidence in the record of a want of testamentary capacity at or prior to the time the will was made. The question of undue influence appears to constitute the real issue.

It is evident from the evidence that Henry G. Heineman was very friendly with proponents, and especially Gorman Heineman, for many years. All of the real estate of the testator was conveyed by outright gift or escrow deed prior to the making of the will. It is true, however, that an escrow deed to a Missouri farm in favor of Kenneth Heineman, a nephew of testator and a cousin of proponents, was withdrawn from escrow by mutual agreement and the property conveyed to the wives of Gorman and Roy Heineman after the will was executed. There is some claim of misrepresentation and fraud in connection with this transaction, but in view of the fact that it occurred long after the will was made we do not deem it material to the issue before us.

The evidence chiefly relied upon by contestants is: That in his declining years Henry G. Heineman was unable to personally handle his business and called upon the proponents to assist him. In September, 1940, after the will was executed, Henry G. Heineman was operated upon for cancer. Upon his return from the hospital he was cared for in the homes of proponents, principally in that of Gorman Heineman. For more than two years they attended to his needs and performed many very odious personal services required because of his affliction. There is evidence that Gorman and Roy Heineman, and their wives, obtained valuable gifts from him during this time. But the record is clear that all of such evidence relates to events which occurred long after the will in question was executed. We are convinced that such evidence is insufficient to sustain a verdict that the will was procured by undue influence. Giving the evidence of contestants its most favorable import, as we are required to do where the trial court has directed a verdict against them, it fails to show any undue influence at the time the will was made.

"An unequal distribution of property among the children

of testator, of itself, raises no presumption of the exercise of undue influence. Undue influence, in order to invalidate a will, must be of such character as to destroy the free agency of the testator and substitute another person's will for his own." *In re Estate of Stuckey,* 105 Neb. 641, 181 N. W. 564.

"When it is shown that a will has been signed and attested by the statutory number of witnesses, and it is conceded that the testator was of sound mind, the will is presumed to be valid. In order to set it aside on the ground that it has been procured by undue influence, competent proof is required, and the burden of proof is ordinarily upon the contestant." *In re Estate of Dovey,* 101 Neb. 11, 162 N. W. 134.

"Where a will is contested because it is alleged that it was procured by undue influence, the burden is upon the contestants to establish by proof, or by fair inference to be drawn from facts proved, that there was undue influence, which induced the testator to dispose of his property contrary to his intention. In such a case, suspicion or supposition of undue influence is not sufficient either to require the submission of the question to the jury, or to sustain a verdict." *In re Estate of Bayer,* 119 Neb. 191, 227 N. W. 928. See, also, *In re Estate of Hagan,* 143 Neb. 459, 9 N. W. 2d 794; *In re Estate of Bowman,* 143 Neb. 440, 9 N. W. 2d 801.

"While it is unwise to lay down any hard and fast rule respecting the time to which this class of testimony must relate, we are of opinion that, under the facts of this case, these circumstances were entirely too remote to be brought within the category of evidence tending to establish undue influence * * * .

"But, aside from this objection, the testimony was clearly inadmissible because not only was there no offer to show by competent evidence a continuance of any general influence, supposed to be established by this class of testimony, down to, or near, the time of the execution of the will, but there was no testimony whatever showing that any undue influence was exercised by proponent over the testator con-

cerning the making of the will at or near the date of its execution, or at any other time. Testimony like that rejected, in order to be admissible, or to have any weight or significance, must be connected with direct or circumstantial evidence tending to prove that undue influence existed and that it was exercised at or near the time the will was made. Indeed, none of the proposed evidence tended to show that any influence was exercised at the time the will was executed, and it was properly rejected. Its admission could not be other than prejudicial to the proponent." *In re Shell's Estate*, 28 Colo. 167, 63 Pac. 413. It seems to us that the necessity of connecting up evidence of undue influence, occurring after the execution of the will, with the execution of the will itself is just as necessary, if not more so, than that which occurred some time prior to its execution. The evidence is material only to the extent that it indicates that the pressure of undue influence was exercised at the very time the will was executed. Consequently, unless there be competent evidence of the exercise of undue influence at the very time the will was made, evidence of it subsequent to the execution of the will can serve no useful purpose.

The testamentary capacity of Henry G. Heineman is not questioned. The evidence of undue influence is insufficient to sustain a verdict. The trial court was therefore right in directing a verdict.

It is contended, however, that the trial court erred in making certain rulings with reference to the admission of evidence. In this respect the record shows that contestants, after complying with the requirements of the applicable statute, took the deposition of Gorman Heineman, one of the proponents. Each question and answer were separately offered in evidence by the contestants as a part of their case in chief on the theory that they were admissions against interest. The court sustained the objections of proponents to this evidence on the ground that it was incompetent, irrelevant and immaterial and for the further reason that Gorman Heineman was present in court and willing to testify. Did the court err in refusing this testimony?

The statement alleged to be an admission against interest "must be disserving or of such a character that from it some inference may be fairly drawn to the party's prejudice. * * * If testimony is of such a character as to constitute an admission of the party, it is not necessary to lay a foundation for its reception by first asking the party if he has made such a statement. Nor need the statement, at the time when it was made, appear to have been against the interest of the party. The statement is admissible if at the time of the trial it is inconsistent with the contention of the party who made it. It is admitted as substantive, and not merely as impeaching, testimony." Jones, Evidence (4th ed.) sec. 236. Such admissions and declarations of a party to an action against his own interest on a material matter may be proved as original evidence. *Prince v. Petersen, ante,* p. 134, 12 N. W. 2d 704. We have also held that such admissions and declarations contained in a deposition may be proved as original evidence. *Prince v. Petersen, supra.*

An examination of the deposition reveals that the evidence contained therein pertains to incidents and events which took place long after the will had been executed and have no tendency to establish the exercise of duress upon Henry G. Heineman at or before he made his will. Neither does such evidence contain any declarations or admissions against interest which tend to prove the existence of duress at the time the will was made. When a will is contested on the ground of undue influence the primary question is whether or not the maker of the will was unduly influenced at the particular time it was executed. Evidence of undue influence subsequent to the execution of the will is not properly admissible until there be competent evidence of undue influence at the time the will was executed, unless it follows so closely as to have evidentiary value. Such evidence may corroborate the existence of undue influence when the will was made, but it is insufficient, standing alone, to sustain such issue. We think the trial court correctly rejected the proffered admissions against interest.

Contestant also urges that the trial court erred in refus-

ing a continuance in the course of the trial. It appears from the record that contestant subpœnaed some witnesses at 1:30 p. m. on the day the trial terminated. The condition of the roads and highways prevented the sheriff from serving the subpœnas on that day. Contestant moved for a continuance but failed to disclose the nature of the testimony, or the materiality thereof, to which the absent witnesses would testify. We have repeatedly held this to be an essential prerequisite to the obtaining of a continuance. An abuse of discretion by the trial court cannot be successfully asserted where such a showing is not made. *Life Ins. Clearing Co. v. Altschuler,* 53 Neb. 481, 73 N. W. 942.

We think the trial court properly applied the law to the facts of this case and that a directed verdict for the proponents was required by the evidence.

AFFIRMED.