IN RE ESTATE OF HAZEL H. FEHRENKAMP, DECEASED.
MYRTLE BAUER ET AL., APPELLANTS, V. CHAUNCEY
HABIG, APPELLEE.
48 N. W. 2d 421

Filed June 22, 1951.   No. 32993.

*B. J. Cunningham, E. Merle McDermott,* and *Paul C. Holmberg,* for appellants.

*Suhr, Pierce & Cronin,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is a will contest. Issues were made and trial was had. At the close of all the evidence proponents moved that the jury be instructed to return a verdict in favor of proponents and to find that the will offered in evidence was the last will and testament of the deceased. The court overruled the motion and submitted the issues to the jury. The jury did not agree upon a verdict and was discharged. Thereupon the proponents moved for judgment in accordance with their motion for a directed verdict. The court overruled the motion. The proponents appeal from that order. We reverse the judgment of the trial court and remand the cause with directions.

Contestant moves for a dismissal of the appeal on the ground that the order entered by the trial court is not an appealable order under sections 25-1315.02 and 25-1315.03, R. R. S. 1943. His contention is that section 25-1315.03, R. R. S. 1943, authorizes an appeal only from an order entering judgment, or from an order granting or denying a new trial, and that no such order has been entered.

Section 25-1315.02, R. R. S. 1943, provides: "Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. * * * if a verdict was not returned such party, within ten days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. * * * If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

Section 25-1315.03, R. R. S. 1943, provides that "An

order entering. judgment as provided in section 25-1315.02, or granting or denying a new trial, is an appealable order * * *."

Contestant's position is that the statute authorizes an appeal from an order sustaining such a motion as was made here and entering judgment thereon but does not authorize an appeal from an order overruling the motion for a judgment. We find no merit in the contention.

We had these sections before us in Krepcik v. Interstate Transit Lines, 153 Neb. 98, 43 N. W. 2d 609, and there held: "Clearly section 25-1315.03, R. R. S. 1943, vests the power here on appeal to review the action taken by the trial court *in any action* taken under section 25-1315.02, R. R. S. 1943, and to enter here the judgment in favor of the party who was entitled to the judgment in the trial court." (Emphasis supplied.) The appeal brings here all matters which were considered by the trial court and which were in effect determined by the trial court under section 25-1315.02, R. R. S. 1943.

The order of the trial court overruling the motion determined the right of the proponents to a directed verdict. The question of the sufficiency of the evidence to sustain a verdict for contestant was determined. The order had the effect of granting a new trial although the specific granting of a new trial was not contained in the order.

Accordingly we hold that the merits of the motion for a directed verdict are here for determination. See Lund v. Holbrook, 153 Neb. 706, 46 N. W. 2d 130.

This brings us to the issues here presented in this case, which are whether or not there was evidence sufficient to take the questions of mental competence and undue influence to the jury.

The contestant is Chauncey Habig, a brother of testatrix. The will involved was executed on May 23, 1947.

We summarize the evidence in the light most favorable to the contestant, resolve controverted facts in his

favor, and give him the advantages of any reasonable inferences. In re Estate of Hunter, 151 Neb. 704, 39 N. W. 2d 418.

It appears from the evidence that testatrix and the contestant became residents of and resided in Grand Island for some 40 years before the execution of the will in question. Testatrix became a member of the Christian Science Church and for years was a reader and organist in the church. She was a practitioner in the faith. Her death occurred on July 22, 1948. Her friends and close associates were members of that church.

The contestant was not a member of testatrix's church or of her particular faith. They had contacts but once or twice a year during the approximate 40-year period prior to 1946.

Contestant and testatrix had a sister who was ill and a patient in a state institution from 1946 on. This sister had four children. One, a son, lost his life in World War II; the others lived in California. Contestant had five children, one of whom lived in Grand Island. Where the others lived does not appear in the record.

Testatrix's husband was also a member of the Christian Science Church. They lived together for many years. Their lives were close. He did everything for her and, in the words of one witness, "spoiled her." He died in February 1946.

Testatrix was a woman of intelligence and refinement. Her interests were largely in her church. She journeyed to Boston and elsewhere on church and religious matters. She is described, apparently as of her later years, as being 5 feet, 5 or 6 inches tall, and weighing 240 pounds.

Following the death of her husband she grieved much, cried often, was lonesome, did not like to be alone, and asked her friends to render many services for her. She became forgetful, would misplace things, and suspect her friends in some instances of taking her personal property, as the evidence shows without cause. She

became irritable and lost her temper at times. She drove a car habitually on the wrong side of the street, and on one occasion in March 1948, backed her car into another car.

In 1947, she was relieved of her duties as organist at the church. Thereafter she attended church less frequently, particularly the Wednesday evening meetings. She enjoyed going to picture shows and would ask friends to accompany her. She would quite often fall asleep in shows, church, and elsewhere. In conversations she would change the subject apparently without cause. She complained that her friends had discarded her. Her health began to fail in 1946, but she continued active as a practitioner until the spring of 1948. She handled her own business affairs, except that she would ask friends to check bills for groceries, read meters, and deliver payments for current accounts.

Following the death of her husband, her contacts with her brother became more frequent. He was often with her. The brother's wife died in March 1947. Their contacts increased but because of his use of medicines and tobacco, he did not live with her although he was then living alone.

In June 1946, testatrix executed a will in which she left bequests to several friends and to her church. She provided a sum for the benefit of her sister, made a bequest to contestant, her brother, and made a substantial bequest and devise of her home to a Miss Tangerman. She made Miss Tangerman a contingent beneficiary of certain bequests. She named her as executrix of her will.

It appears that for many years prior to the making of this will Miss Tangerman had been an attentive companion and friend, and had given much of time and service to testatrix. It appears also that Miss Tangerman in April 1947, because of other responsibilities, advised testatrix that she no longer could give of her time and energy to testatrix to the extent that she formerly had

done. A Miss Bauer, a friend of long standing, began to care actively for testatrix in the fall of 1946. Testatrix then called for and received the continued attention and services of Miss Bauer.

In the May 23, 1947, will, testatrix made no changes in some of the bequests provided in the 1946 will, changed others, and in part made Miss Bauer contingent beneficiary. She provided a cash bequest to Miss Tangerman, continued the bequest for the benefit of her sister, changed and increased the bequest to her brother, and devised her home to Miss Bauer.

The same attorney prepared both wills. On all occasions testatrix came to his office unaccompanied. Before the will in question was prepared, she consulted the lawyer on a number of occasions and told him of changes which she wanted made in the 1946 will. He prepared a proposed will. She took it away with her and several days later returned, approved the contents, and the final draft was prepared and executed. On or about the day she executed the will she told one of her friends that she was changing her will and remembering her friends, and asked that friend if she wanted to be remembered and was told that she did not. She left the will with her lawyer who retained it until her death. That the will was executed as provided by law is not challenged here.

There is evidence that both before and after the execution of the will in question, testatrix told contestant and others she had left all her property and also the home to him. This evidence will be referred to later in this opinion.

There also is evidence that in the period after the execution of the will the characteristic actions of the testatrix became more noticeable. She suffered a speech difficulty beginning in July 1947, and later a paralysis of the throat. Her friends continued to help her. Toward the last of her life, a lady, with whom contestant was keeping company, was called in to help as a practical

nurse and, at testatrix's suggestion, contestant and the lady were married July 1, 1948, and thereafter assisted in caring for testatrix.

Testatrix kept money and valuable jewelry about the home. In May 1948, Miss Tangerman consulted testatrix's lawyer and at his suggestion Miss Bauer and another took these valuables to the bank and placed them in testatrix's safety box. It was done without testatrix's knowledge. She did not approve. Contestant protested.

The proponents bring this case here with the contention that there is no evidence in the record that would sustain a verdict that the testatrix lacked sufficient mental capacity to make the will or that the will was the result of undue influence. The contestant here contends that the evidence is sufficient to sustain a verdict on either or both of those grounds. The trial court gave no reasons for its decision. This presents a situation analogous to that which we had in Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772. Under these circumstances the proponents are not required to establish a negative. The duty rests upon the contestant to point out the evidence here that he contends exists in the record and which he contends justifies the submission of either or both of these issues to a jury. The contestant here has undertaken to do that.

Contestant cites the rule that "A person who understands the nature of his acts, the extent of his property, the proposed disposition of it, and the natural objects of his bounty, is competent to make a will." In re Estate of Witte, 145 Neb. 295, 16 N. W. 2d 203, on rehearing, 145 Neb. 305, 17 N. W. 2d 477. Contestant contends that there is an issue of fact based on the evidence as to each of these elements.

Contestant contends that textatrix did not understand the nature of her act in making the will. Here contestant relies upon the testimony of a nonexpert witness who was permitted to testify over objection that in her

opinion testatrix "didn't know what she was doing" in making the will.

The foundation evidence for this opinion is along the general lines of the characteristics of the testatrix hereinbefore recited. It does not in anywise meet the test that "* * * it must appear that the witness in giving his or her opinion as to mental capacity must have in mind the quality of mental capacity essential to the making of a valid will, that is whether or not the testator understood the nature of the acts, knew the extent of the property, understood the proposed disposition, and knew the objects of the bounty." In re Estate of Witte, *supra*.

As in the Witte case so here this witness gave her opinion without anything to indicate that she was informed as to the qualities of mind constituting mental capacity to make a will. As we held there so we hold here that the opinion of this witness has no weight as evidence in determining the question here.

Contestant contends that there is evidence that testatrix did not know the extent of her property. Testatrix provided in her will for a number of cash bequests, specific bequests of other personal property, and devised her home specifically. The will indicates a full knowledge of her property. In addition to specific items she had cash, bank and building and loan accounts, insurance, and bonds. There was a debt secured by mortgage on the home. Contestant argues that as of the date of her death there were not sufficient assets to pay the expenses of her last illness, and probate, the mortgage, and specific bequests. We need examine this contention no further than to point out that assets as of the date of death do not establish assets as of the date of the will. In addition to this fact is the testimony on recross-examination by contestant of the attorney who drew the will that to his recollection testatrix at the time the will was being prepared had sufficient property to pay the mortgage and specific bequests.

It is also argued that testatrix had cash, credits, and

deposits sufficient to pay the mortgage on her home and did not do so. Obviously that is not sufficient to establish mental incompetency.

It is further pointed out that the witness who expressed the opinion last above discussed also was asked if testatrix knew the extent of her property and answered, "That I just couldn't say. I wouldn't believe she did." For the reasons above given the opinion has no weight in determining the issue presented here.

Contestant contends that there is evidence, sufficient to go to the jury, that testatrix did not understand the disposition she was making of her property. Reliance is made upon the contestant's testimony that testatrix told him several times "* * * she had left everything to me"; that she "indicated" that to him in 1946, and said in 1948, "I have left everything to you." The date of the 1948 statement is not fixed but connecting it with other evidence this statement appears to have been made about July 1, when testatrix was asking contestant to marry so that he and his wife could move in and help care for testatrix. There also is evidence of another witness that testatrix said in the first part of 1947, right after contestant's wife died, that contestant was all "* * * she had left and everything was his that she had." The contestant's wife died March 4, 1947. It is apparent that two of these statements were made prior to the execution of the contested will on May 23, 1947, and one long after, when there was discord in testatrix's home between contestant and the friends of testatrix.

The evidence here is that testatrix knew the contents of her will when it was executed. "The question of testamentary capacity relates exclusively to the time when the will was made, and although competent evidence of the testator's condition of mind long before, closely approaching, and shortly after the time of its execution is admissible, it is received only to assist in revealing his state of mind at that time." In re Estate of Inda, 146 Neb. 179, 19 N. W. 2d 37. The statements

here made do not go to her knowledge of the disposition made of her property at the time the will was executed.

Contestant contends there is evidence that the testatrix did not know the natural objects of her bounty. The will itself is the best answer to that contention. She gave bequests to her brother (the contestant); she provided for her sister (and there is no indication of financial needs of the sister); she did not provide for nieces and nephews. The will shows a pattern of a desire to compensate for services and kindnesses to testatrix. With the exception of one nephew, there is no showing that the paths of the nieces and nephews ever met those of the testatrix. There is no showing of any indication of a reason for a bequest to that nephew. We know of no rule of law that requires bequests to relatives and are cited to none. Nor do we know of any rule that requires a testator to mention all relatives in a will. Whether or not testatrix was justified in making the provisions of the will which she did is of no concern to the courts, provided she had the mental capacity to make a valid will. The evidence is ample to sustain her mental capacity to do so. We find no evidence of mental incapacity at the time the will was executed sufficient to sustain a verdict of a lack of testamentary capacity. See In re Estate of Thomason, 144 Neb. 300, 13 N. W. 2d 141.

This brings us to the question of whether or not there was evidence sufficient to take the case to the jury on the issue of undue influence. On this question the rules are:

"In a will contest on the ground of undue influence the burden is on the contestant to prove by a preponderance of the evidence (1) that the testator was a person who would be subject to such influence, (2) that there was opportunity to exercise such influence, (3) that there was a disposition to exercise such influence, and (4) that the result was the effect of such influence."

"Undue influence cannot be inferred alone from motive or opportunity. There must be some evidence,

direct or circumstantial, to show that undue influence not only existed, but that it was exercised at the very time the will was executed."

"Mere suspicion, surmise, or conjecture is not enough to warrant a finding of undue influence. There must be a solid foundation of established facts upon which to rest an inference of its existence. This proposition applies with peculiar force when the result of drawing such an inference is to destroy the effect of a written instrument prepared with deliberation and signed and attested with all the formalities required by law for the execution of a will."

"There may be influences directing the will-maker's attention to proper obligations which it might be thought ought to be satisfied by testamentary provisions. Such influences may be persuasive and effective, but, so long as not coercive, they are not undue. Circumstances often arise where such conduct is wholly justifiable." In re Estate of Thompson, 153 Neb. 375, 44 N. W. 2d 814.

Contestant contends that testatrix was at the time of making the will "susceptible to influence" and relies upon the testimony hereinbefore recited and in particular upon the changes made in the 1947 will, when contrasted with the 1946 will, to show that she was influenced by the changing events, friends, and conditions, and upon one witness who testified that she could be influenced in her decisions. The rule, however, is: "In order to invalidate a will, undue influence must be of such a character as to destroy the free agency of the testator and substitute another person's will for his own." In re Estate of Heineman, 144 Neb. 442, 13 N. W. 2d 569.

We find no evidence and are cited to none which would sustain a finding that testatrix was susceptible to influence to the extent that another person's will could be substituted for her own. There is ample evidence that such could not be done, such as the repeated efforts of friends to have testatrix take her brother into her home.

The evidence shows ample opportunity by several

beneficiaries, including Miss Bauer, to exercise undue influence.

Contestant contends that the evidence shows a disposition of Miss Bauer to exercise undue influence. Here reference is made to testimony of Miss Bauer which shows only that she was insistent on carrying out the wishes of testatrix in paying accounts when testatrix was ill. Reference also is made to the taking of money and valuables to a place of safekeeping shortly before testatrix's death. This was done on the advice of testatrix's lawyer. It was obviously to conserve the estate. This evidence does not tend to show undue influence at the time the will was executed.

Contestant contends that the fact that the second will reduced materially the benefits to Miss Tangerman and that Miss Bauer became a substantial beneficiary under the second will, shows a disposition of Miss Bauer to exercise undue influence. Concededly those things are results which might follow undue influence, but there is an absence of a solid foundation of established facts upon which such an inference can be based.

Contestant contends that the result appears to be the result of undue influence. The argument here is from result to suspected cause.

We recognized in the case of In re Estate of Bainbridge, 151 Neb. 142, 36 N. W. 2d 625, that "In evaluating the testimony and proper inferences therefrom, it is not always possible to apply the evidence tending to establish improper influence which is referable to the will solely to one of the essential elements. * * * It is permissible therefore not to strive to separate each fact supported by evidence offered as proof of undue influence and allocate it under one or more of the four essential elements requisite to establish the exercise of undue influence, but to view the entire evidence offered by the contestants as proof of this issue and rest the decision upon whether or not the evidence as a whole is of such a substantial nature as to contain some proof of

each of the essential elements, and to require that the issue of undue influence be submitted to and determined by a jury."

Whether we view this record as to each of the elements or as a whole, the fact remains that there is an absence of a solid foundation of established facts upon which to rest an inference of undue influence. There is mere suspicion, surmise, and disappointment. These are not enough to support a verdict of undue influence.

The rule is: "In a will contest on the ground of mental incompetency and undue influence, if the evidence is insufficient to sustain a verdict upon either of such issues in favor of the contestants, then the trial court should withdraw both issues from the jury and direct a verdict." In re Estate of Scoville, 149 Neb. 415, 31 N. W. 2d 284.

Pursuant to section 25-1315.03, R. R. S. 1943, the judgment of the trial court is reversed and the cause is remanded with directions to sustain proponents' motion made at the close of all the evidence and to enter judgment in accord therewith in favor of proponents.

REVERSED AND REMANDED WITH DIRECTIONS.